[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 846 
 FACTS ¶ 1. This case involved the flooding in 2001 of several homes in the Faust Drive subdivision in Gulfport, Mississippi. The cause of this flooding, according to the residents, was overflow from a drainage ditch that runs along the northern and western edge of the Faust Drive subdivision and through a culvert under Dedeaux Road to the south.
 ¶ 2. This area was part of the county until January 1994 when it was annexed into the City. The neighborhood residents testified that while the ditch was under county maintenance, water never rose, even during hard rains, above the banks of the ditch high enough to come into their homes. When the area came under control of the City, the residents noticed that the ditch was not being regularly cleaned, and the build-up was impeding the flow of water and making the area unsightly. The residents testified that the county consistently removed silt and overgrowth from *Page 847 
the ditch, but since the area was annexed the ditch was not cleaned.
 ¶ 3. After complaining to the City about the condition of the ditch, the residents noticed the City picking up some debris, but tree branches, old tires, cans, and appliances were still noticed in the ditch. In some areas, the ditch had once been four to five feet deep but was reduced to less than a foot because of the build up of sand and debris. Some areas began to resemble the rest of the terrain rather than a ditch. Several more calls were made to the City requesting that the ditch be cleaned, but no maintenance was done.
 ¶ 4. Tropical storm Allison hit the Mississippi Gulf Coast on June 11, 2001. The Civil Defense and National Weather Service recorded 6.36 inches of rainfall in Gulfport on the morning of June 11. During the storm, the homes on Faust Drive were flooded. According to the residents' testimony the City's failure to properly maintain the ditch caused the neighborhood to flood.
 PROCEDURAL HISTORY ¶ 5. On October 22, 2001, fifteen residents of the Faust Drive area of Gulfport filed a complaint in the Circuit Court of Harrison County against the City of Gulfport alleging that the City's failure to properly maintain the drainage ditch directly and proximately caused their property to flood. The City responded arguing that it had contracted out all maintenance of the ditch to Operations Technologies, Inc. (Optech), and, thus, Optech was a necessary party. An agreed order was entered to allow an amendment, and on September 9, 2003, plaintiffs amended their complaint to include Optech as a defendant. The trial judge later granted summary judgment in favor of Optech.
 ¶ 6. Before trial, the City moved for summary judgment. Its motion was denied on February 17, 2005. A bench trial began on February 21, 2005. At the conclusion of the trial on February 23, the residents sought to introduce the deposition testimony of their sole expert witness. The City renewed its previously filed motion to strike the deposition which was granted by the trial judge. The trial court then granted the City's motion for directed verdict pursuant to M.R.C.P. 41(b).
 ¶ 7. Six residents (hereinafter "Smith") now appeal to this Court asserting the following issues: (1) the trial court erroneously excluded or struck the deposition of the subdivision residents' expert, M.E. Thompson, based on a misapplication of M.R.C.P. 32 and an erroneous requirement on the method of stating opinions with sufficient certainty; (2) the trial court erred in determining that as a matter of law expert testimony was required to prove causation in a failure to properly maintain drainage flooding case; (3) the trial court applied an incorrect legal standard in regard to proximate causation; and (4) the trial court's finding concerning the absence of testimony of any direct observation of anything blocking the flow of water in the ditch was clearly erroneous. The City of Gulfport cross-appeals asserting: (1) the trial court reviewed the City's summary judgment motion under an incorrect legal standard; (2) improper documents were considered in opposition to the motion for summary judgment and there was lack of evidentiary support for plaintiffs' negligence theory; and (3) alternatively, the plaintiffs' claims were meritless and/or the City was immune from liability under the Mississippi Torts Claims Act.
 ¶ 8. Finding no error, we affirm.
 DISCUSSION I. DID THE TRIAL COURT ERR IN EXCLUDING THE RESIDENTS' EXPERT'S DEPOSITION? *Page 848 
 ¶ 9. M.E. Thompson, a civil engineer, was Smith's sole expert witness concerning the source of flooding on Faust Road. According to Smith's counsel, Thompson was available to testify on the first two dates that this case was scheduled for trial. On the third date, however, when this matter came to trial, Thompson was not available to testify as he was a defendant in a federal trial taking place simultaneously in Gulfport. Smith offered Thompson's deposition in lieu of his live testimony. The City moved to exclude the deposition on the ground that it did not have notice that the deposition was taken for trial purposes.
 ¶ 10. The trial judge excluded Thompson's deposition as not complying with Rule 32 of the Mississippi Rules of Civil Procedure. When Smith's attorney asked for clarification on the ruling, the judge stated, "I'll go ahead and also incorporate in there that the failure to lay the predicate and heighten the awareness in the witness's mind to give his opinion based on reasonable certainty or scientific proof, and that would give you another basis. I would incorporate that into the ruling." Smith argues to this Court that both of the reasons given by the trial judge are erroneous.
Standard of Review
 ¶ 11 The admission of deposition testimony is within the sound discretion of the trial court. Robinson v. Lee,821 So.2d 129, 133 (¶ 16) (Miss.Ct.App. 2000). While the admission of evidence is within the discretion of the trial judge that discretion is not unfettered. Id.
at 134 (¶ 19). It is especially not unfettered where the deposition of an absent witness is sought to be introduced pursuant to M.R.C.P. 32(a)(3). Id. The party offering the deposition must show that it fits into one of the stated exceptions. Id. Where the exercise of the court's discretion is not supported by the evidence, this Court is obligated to find an abuse of discretion. Id.
Failure to Comply with Rule 32
 ¶ 12. Mississippi Rule of Civil Procedure Rule 32(a)(3) states:
 (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) that the witness is a medical doctor or (F) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be so used.
 ¶ 13. The only feasible subsection that applies in this case is Rule 32(a)(3)(F). Rule 32(a)(3)(C) is not applicable, although Smith attempts to argue that being a defendant in a federal trial is comparable to being imprisoned. Rule 32(a)(3)(D) is not applicable since no subpoena was issued. Smith argues that the trial court should have taken judicial notice of the fact that their expert was a party in a federal trial and, thus, unavailable to be subpoenaed. Smith asserts no law in support of this argument and did not ask for judicial notice to be taken at the trial level. Therefore, we will not address whether judicial notice should have been taken. *Page 849 
 ¶ 14. Rule 32(a)(3)(F) gives the trial court discretion to use a witness's deposition if, upon application and notice, exceptional circumstances make it desirable in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court. Smith argues that the trial court erred by interpreting Rule 32(a)(3) to require that proof, other than counsel telling the court that the witness was unavailable, was needed. Smith argues that proper "application and notice" was given and such exceptional circumstances existed to necessitate the use of Thompson's deposition. The first notice of record given to the City and the trial court of Thompson's unavailability was approximately a week before trial,[1] which was to begin on February 21, 2005. Smith's attorney did not ask for the trial to be rescheduled. On appeal, the City accuses Smith of making "a veiled attempt at hiding Thompson from cross-examination."
 ¶ 15. Smith also argues that the trial judge erred in his ruling because he believed that ten days written notice of unavailability was required before a deposition could be admitted. Smith provided no cite for this proposition, and we find nothing in the record where the trial judge stated that ten days written notice was required.
 ¶ 16. Again, the admission of deposition testimony is within the sound discretion of the trial court. The trial court found the City's motion to strike Thompson's deposition well taken, and we find no error in his finding. The burden was on Smith to show that Thompson's deposition fit into one of the stated exceptions. The record before this Court does not establish that any of the Rule 32(a)(3) exceptions were met. The trial court did not abuse its discretion, and the exclusion of the deposition is affirmed.
Failure to Give Expert Opinion Based on ReasonableCertainty or Scientific Proof
 ¶ 17. Smith argues that the trial court erred by holding, in part, that Thompson's deposition should be excluded for his failure to give opinions based on scientific certainty. This was specifically addressed in Catchings v. State,684 So.2d 591 (Miss. 1996). The issue in Catchings was "whether medical experts are required to state their opinions `to a reasonable medical certainty' in order that their opinions be given probative value and therefore be admissible as evidence."Id. at 597. In holding that this specific phrase is not required, the supreme court stated that:
 The phrase "with a reasonable degree of medical certainty" is a useful shorthand expression that is helpful in forestalling challenges to the admissibility of expert testimony. Care must be taken, however, to see that the incantation does not become a semantic trap and the failure to voice it is not used as a basis for exclusion without analysis of the testimony itself.
 Situations in which the failure to qualify the opinion have resulted in exclusion are typically those in which the expert testimony is speculative, using such language as "possibility." . . .
 Accordingly, while the particular phrase used should not be dispositive, it may indicate the level of confidence the expert has in the expressed opinion. Perhaps nothing is absolutely certain in the field of medicine, but the intent of the law is that if a physician cannot form an opinion with sufficient certainty so as to *Page 850 
make a medical judgment, neither can a jury use that information to reach a decision.
Id. (citations omitted). We note that whileCatchings applied to medical testimony, this standard is also applicable to scientific testimony.
 ¶ 18. While the parties to the deposition stipulated that the deposition was to be "taken for discovery and all other purposes, in accordance with the provisions of the Mississippi Rules of Civil Procedure," the trial judge noted that the atmosphere indicated "that it was a casual setting and they were just getting what he was about to testify, more so a discovery than for trial." To the trial judge, the deposition seemed like "pure casual conversation." Counsel for the plaintiffs asked no questions during the deposition. The one hundred eighteen page deposition consisted of questioning by counsel for Optech and counsel for the City of Gulfport.
 ¶ 19. While no specific language, such as "with a reasonable degree of scientific certainty," is required, an expert witness must still form his or her opinion with scientific certainty. Miss. Transp. Comm'n v. McLemore,863 So.2d 31, 36 (¶ 11) (Miss. 2003) The expert's opinion cannot be mere speculation. Id. The trial judge was concerned after reading the deposition that, even if it was admitted, Thompson's opinions were too speculative to prove causation.
 ¶ 20. The failure to use the phrase "with a reasonable degree of scientific certainty" is not required, and the trial judge erred in his ruling requiring such specific language to be used. However, since the admission of deposition testimony is within the sound discretion of the trial court and the trial judge gave valid reasons for excluding the testimony, we cannot find error in the exclusion of the deposition.
 II. DID THE TRIAL COURT ERR IN DETERMINING THAT AS A MATTER OF LAW EXPERT TESTIMONY WAS REQUIRED TO PROVE CAUSATION IN A FAILURE TO PROPERLY MAINTAIN DRAINAGE FLOODING CASE?
 ¶ 21. Smith argues that the lay testimony of the residents and photographs of the ditch were enough to find the City liable for negligence in failing to properly maintain the ditch. Under the same heading, Smith also argues that the City was under a non-delegable duty to maintain storm sewers, drains, and ditches in a reasonably safe condition, and therefore, the City is liable to the property owners based on their testimony that the City was given notice and did not correct the problem.
 ¶ 22. The trial court's findings on causation are as follows:
 It's the position of this Court because of the complex nature of the facts in this case as outlined at this point, in addition to finding that based on the record made at this time that the causation issue has not been met or the breach by the standard required and I'm going to go ahead and go out on a limb and say that in this case, and in the complex nature that I perceive it to be that an expert would be required to testify.
 The testimony of the witnesses in this case, again I think the Court has stated that that testimony basically is what they saw, and that they reached a conclusion that it had to be the fact that it was dirty that contributed to the flooding of their homes. The Court judges that testimony in the light that that is weak opinion testimony, albeit that it's lay.
 ¶ 23. Smith cites City of Meridian v. Bryant,232 Miss. 892, 100 So.2d 860 (1958); Cain v. City ofJackson, 169 Miss. 96, 152 So. 295 (1934); and City ofVicksburg *Page 851 v. Porterfield, 164 Miss. 581, 145 So. 355 (1933), for the proposition that lay witness testimony alone is sufficient to prove causation. None of these cases mention whether expert testimony is or is not required to prove causation. While the cases discuss a municipality's duty to maintain a ditch, none specifically addresses what type of testimony was used in proving the City's failure to maintain the ditch. Further, these cases are distinguishable as each dealt with an alteration to the existing landscape which affected the drainage.
 ¶ 24. Smith next argues that Porterfield,164 Miss. 581, 145 So. 355, in combination with Mississippi Rule of Evidence 701 provides strong support that lay witness testimony is sufficient to establish causation. Rule 701 states:
 If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
Returning to the trial court's findings, we find that Smith's argument, even if correct, is unfounded. The trial court did not find that expert testimony was required to prove causation in all cases regarding failure to maintain a city ditch. The trial court instead found that the testimony of the lay witnesses was not helpful or determinative. The trial court found that an expert was needed in this case because all that could be gathered from the lay witnesses's testimony was "guesswork, speculation or conjecture as to what caused the ditch to overflow."
 ¶ 25. The trial court did not make a blanket statement that expert testimony was required in all drainage cases to prove causation, and thus this argument is without merit.
 III. DID THE TRIAL COURT APPLY AN INCORRECT LEGAL STANDARD IN REGARD TO PROXIMATE CAUSATION?
 ¶ 26. The standard of review for application of the wrong legal standard by the trial court is de novo. Quitman Countyv. State, 910 So.2d 1032, 1035 (¶ 6) (Miss. 2005). This Court does not hesitate to reverse where the trial judge has applied an erroneous legal standard. Id.; McClendon v.State, 539 So.2d 1375, 1377 (Miss. 1989).
 ¶ 27. Smith argues that the trial court erred by suggesting that proof of the extent of flooding caused by the City's negligence was required. Smith cites Kiddy v.Lipscomb, 628 So.2d 1355, 1358 (Miss. 1993), for the proposition that as long as the defendant's negligence contributed to the injury, it is no defense that the injury would not have resulted from the defendant's negligence alone.
 ¶ 28. There is no need for this Court to conduct a denovo review with regard to causation as we find that the trial court did not apply the wrong legal standard. Although the trial judge stated that there were "multiple reasons that may exist as to why the ditch overflowed," his ruling was that Smith failed to prove that the City's negligence was one of the reasons. No clear evidence existed in the record to show that the City's negligence caused the ditch to overflow.
 ¶ 29. We find this issue to be without merit as Smith misstates the trial court's findings.
 IV. WAS THE TRIAL COURT'S FINDING CONCERNING THE ABSENCE *Page 852 
OF TESTIMONY OF ANY DIRECT OBSERVATION OF ANYTHING BLOCKING THE FLOW OF WATER IN THE DITCH CLEARLY ERRONEOUS?
 ¶ 30. Smith argues that "the trial court found there was no testimony that the residents actually observed any obstruction in the ditch." Smith further argues that "[t]he trial court also stated there was no testimony that after the water receded anyone observed anything that would have blocked the flow of water." The trial court's actual finding was as follows:
 I think one of the plaintiffs testified that he walked the area, and there was no testimony showing that he observed any obstruction. All he saw was, like I say, a sea of water. There is no testimony after whatever water was there had receded as to anything that would have blocked — I'm not talking about impeded, but have blocked the flow of water.
 ¶ 31. The trial court recognized that testimony existed that debris impeded the flow of water in the ditch. This is consistent with the residents' testimony that vegetation, silt, appliances, and other debris impeded the flow of water. The testimony regarding these obstructions was not sufficient to reach a conclusion that the City's failure to remove the debris caused the neighborhood to flood.
 ¶ 32. This issue is without merit.
ISSUES ON CROSS-APPEAL
 I. DID THE TRIAL COURT USE AN INCORRECT LEGAL STANDARD IN REVIEWING THE CITY'S SUMMARY JUDGMENT MOTION?
 II. WERE IMPROPER DOCUMENTS CONSIDERED IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT AND WAS THERE WAS LACK OF EVIDENTIARY SUPPORT FOR PLAINTIFFS' NEGLIGENCE THEORY?
 III. WERE THE PLAINTIFFS' CLAIMS MERITLESS AND/OR WAS THE CITY IMMUNE FROM LIABILITY UNDER THE PROVISIONS OF THE MISSISSIPPI TORTS CLAIMS ACT?
 ¶ 33. Having found for the City, there is no need for this Court to rule on whether the denial of summary judgment was improper.
 ¶ 34. THE JUDGMENT OF THE HARRISON COUNTY CIRCUITCOURT IS AFFIRMED ON DIRECT AND AFFIRMED ON CROSS-APPEAL. ALLCOSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
[1] The actual date Thompson's unavailability was noticed is not apparent from the record, and the briefs are in conflict on this issue. It appears to be sometime between February 12 and 17.