MYERS, P.J.,
 

 for the Court:
 

 ¶ 1. Henry Crawford Rhaly, Jr., John Thomas Rhaly, William DeWitt Rhaly, Bill Alan Wilson, Linda Gay Wilson, Mary Sue Creel, and Hilda Louise Ferron (collectively, the Rhalys) were owners of property in Jackson, Mississippi, located near Eu-bank’s Creek, an improved drainage ditch. The Rhalys brought suit against Waste Management of Mississippi, Inc., alleging that they had suffered damage to their properties and related injuries from two separate flood events caused by Waste Management’s negligence, the first occurring on July 30, 2002, and the second on April 6, 2003.
 

 ¶ 2. The Rhalys’ allegations center around a Waste Management dumpster serving Mike’s Gas Plus, located near State Street in Jackson. The Rhalys allege that Waste Management routinely placed the dumpster too close to the ditch and that prior to each of the flood events, rainwater had carried it into the ditch, where the dumpster became lodged against a downstream bridge over State Street. The dumpster then obstructed the ditch and caused it to overflow its banks, flooding the Rhalys’ nearby homes and properties.
 

 ¶ 3. Suit was initially filed after the 2002 flood, naming Waste Management as a defendant; it also named BFI, Inc., another waste services company, and the City of Jackson as co-defendants. The Rhalys alleged that the City had negligently maintained the drainage ditch, and that a BFI dumpster had contributed to the 2002 flood. After the 2003 flood, another suit was filed, naming only Waste Management and the City as defendants. These actions were later consolidated into the instant suit. Prior to this appeal being taken, BFI was dismissed as a defendant, and a default judgment was entered against the City.
 

 ¶ 4. The trial court ultimately granted summary judgment to Waste Management, finding that the injury alleged was not foreseeable and that the Rhalys had produced no evidence that the allegedly negligent placement of the dumpster had caused either flood. Because we find a genuine issue of material fact as to each of these issues, we reverse the trial court’s judgment and remand this case for further proceedings.
 

 STANDARD OF REVIEW
 

 ¶ 5. We review a trial court’s grant of summary judgment de novo.
 
 Treasure Bay Corp. v. Ricard,
 
 967 So.2d 1235, 1238 (¶ 10) (Miss.2007). This Court “examines all the evidentiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.”
 
 City of Jackson v. Sutton,
 
 797 So.2d 977, 979 (¶ 7) (Miss.2001) (citations omitted). The moving party has the burden of demonstrating that no genuine issue of material fact exists, and the nonmoving party must
 
 *512
 
 be given the benefit of doubt concerning the existence of a material fact.
 
 Id.
 
 “If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party’s favor.”
 
 Monsanto Co. v. Hall,
 
 912 So.2d 134, 136 (¶ 5) (Miss.2005). “A fact is material if it tends to resolve any of the issues properly raised by the parties.”
 
 Moss v. Batesville Casket Co., Inc.,
 
 935 So.2d 393, 398 (¶ 16) (Miss.2006) (citation and internal quotations omitted).
 

 DISCUSSION
 

 ¶ 6. The Rhalys have identified eighteen issues on appeal. Many of these asserted issues are redundant, and all center around the trial court’s decision granting summary judgment on their negligence claim. Accordingly, we take this appeal as presenting a single issue: whether the trial court erred in granting summary judgment to Waste Management. The trial court found no genuine issue of material fact as to two elements of the Rhalys’ negligence claim: duty and proximate cause.
 

 1. Character of the Action
 

 ¶ 7. Despite the relatively simple factual basis of the Rhalys’ claims, the parties and the trial court below have struggled to place them within a proper legal framework. Throughout this litigation, the parties have repeatedly (and often haphazardly) interjected premises-liability concepts into what appears to be an otherwise straightforward negligence claim.
 

 ¶ 8. It is axiomatic that in a negligence action, “the plaintiff bears the burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach of duty, proximate causation, and injury.”
 
 Palmer v. Biloxi Reg’l Med. Ctr.,
 
 564 So.2d 1346, 1355 (Miss.1990). The purpose of applying premises liability principles is to determine the duty owed by an owner or occupier of land to entrants on the property.
 
 Little ex. rel Little v. Bell,
 
 719 So.2d 757, 760 (¶ 14) (Miss.1998). To that end, we seek to classify the entrants based upon “common-law distinctions between trespassers, licensees, and invitees.”
 
 Id.
 
 We need not go farther into this analysis to recognize the futility of the Rhalys’ occasional attempts to couch this action as one in premises liability. Even if we were to accept their argument that the dumpster or the space it occupied amounted to a “premises,” the Rhalys have utterly failed to support their argument that they were owed a duty of care as invitees, as they appear to argue they should be classified. Indeed, the Rhalys have not shown how they were “entrants” of any classification.
 

 ¶ 9. To the extent that the Rhalys have alleged premises liability, we find no fault in the trial court’s grant of summary judgment. Nonetheless, the Rhalys’ principle argument is negligence, and they have continuously asserted that Waste Management owed them a duty to use ordinary or reasonable care under the circumstances. Their failure to establish a duty of care through premises liability is not dispositive of the negligence claim.
 

 2. Foreseeability
 

 ¶ 10. The trial court found that the injury suffered by the Rhalys — the flooding of their properties — was not a foreseeable consequence of the dumpster’s placement along the banks of the ditch. The trial court concluded, therefore, that Waste Management owed no duty to the Rhalys not to place it in such a position. Likewise, the trial court concluded that the placement of the dumpster, even assuming it was a cause in fact of the injury, was not the proximate or legal cause of the unfore
 
 *513
 
 seeable injury suffered. Both of these findings hinge on foreseeability.
 

 ¶ 11. The supreme court has stated:
 

 The rule is firmly established in this state, as in nearly all the common law states, that in order that a person who does a particular act which results in injury to another shall be liable therefor, the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom, but that the actor is not bound to a prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities. This rule is affirmed in one way or another in cases which will run into the hundreds in this state.
 

 [[Image here]]
 

 Hence, the law must say, as it does that “care or foresight as to the probable effect of an act is not to be weighed on jewelers’ scales, nor calculated by the expert mind of the philosopher, from cause to effect, in all situations,” ... and that it would impose too heavy a responsibility for negligence to hold the tort feasor accountable for what was unusual and unlikely to happen, or for what was only remotely and slightly probable.... “A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard[ ] of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible.”
 

 Rolison v. City of Meridian,
 
 691 So.2d 440, 444 (Miss.1997) (internal citation omitted) (quoting
 
 Mauney v. Gulf Refining Co.,
 
 193 Miss. 421, 427-30, 9 So.2d 780, 780-81 (1942)). Thus, the rule of law is that a defendant may not be held liable for the unforeseeable consequences of his negligent act.
 
 City of Jackson v. Estate of Stewart ex rel. Womack,
 
 908 So.2d 703, 713 (¶ 49) (Miss.2005). Or, viewed differently, there is no duty to protect against an unforeseeable harm and, therefore, no negligence in failing to do so.
 
 See Crain v. Cleveland Lodge 1532, Order of Moose, Inc.,
 
 641 So.2d 1186, 1190-91 (Miss.1994). “Foreseeability is an essential element of both duty and causation.”
 
 Patterson v. Liberty Assocs., L.P.,
 
 910 So.2d 1014, 1019 (¶ 14) (Miss.2004) (quoting
 
 Delahoussaye v. Mary Mahoney’s, Inc.,
 
 783 So.2d 666, 671 (¶ 13) (Miss.2001)).
 

 ¶ 12. The trial court found no genuine issue of material fact as to foreseeability, finding that the Rhalys had failed to produce evidence that Waste Management had “notice” that the dumpster amounted to a “dangerous condition” while it was placed along the banks of the ditch. The trial court reviewed the record and acknowledged evidence that Waste Management was aware its dumpsters could float or otherwise be carried by running water. It found no evidence, however, that anyone had expressly complained to Waste Management regarding the danger the dumpster posed or the role it allegedly had played in another flooding incident which had occurred at the same location in 1983. The trial court also found no evidence that Waste Management had knowledge, at the time of either the 2002 or 2003 flood, that its dumpster had been involved in previous
 
 *514
 
 floods.
 
 [1]
 

 ¶ 13. In reaching this conclusion, it appears that the trial court confused foreseeability, as we have discussed it above, with notice of a dangerous condition in premises liability eases.
 
 See generally Miller v. R.B. Wall Oil Co., Inc.,
 
 970 So.2d 127, 132 (¶ 17) (Miss.2007). As we have said, this is not a premises liability case, and notice is not the issue. The Rhalys were not required to show that Waste Management was actually aware of the danger of flooding presented by the placement of the dumpster. Instead, at issue is whether Waste Management should have reasonably foreseen that the dumpster, if placed on the banks of the ditch, could be carried into the ditch by runoff or rising water, obstruct the ditch, and thereby cause or intensify flooding of nearby properties.
 

 ¶ 14. In
 
 Rein v. Benchmark Construction Company,
 
 865 So.2d 1134 (Miss.2004), the supreme court addressed the role of foreseeability in determining the existence of a duty. The court stated:
 

 In analyzing an actor’s alleged negligence, this Court asks whether a duty exists and whether it has been breached. That is a question of law. But, “[t]he important component of the existence of the duty is that the injury is ‘reasonably foreseeable,’ ” and thus it is appropriate for the trial judge to decide.
 
 Lyle v. Mladinich,
 
 584 So.2d 397, 399 (Miss.1991).
 

 Id.
 
 at 1143 (¶ 29). The court continued:
 

 While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury. Juries are not instructed in, nor do they engage in, consideration of the policy matters and the precedent which define the concept of duty. This Court has held that the existence vel non of a duty of care is a question of law to be decided by the Court.
 

 Id.
 
 at (¶ 30) (internal citations omitted) (quoting
 
 Donald v. Amoco Prod. Co.,
 
 735 So.2d 161, 174 (¶ 43) (Miss.1999)). However, foreseeability presents a question for the jury where reasonable minds may differ and sufficient evidence of negligence is presented.
 
 Id.
 
 at 1144 (¶ 31).
 

 ¶ 15. We think it beyond question that, as a matter of law, Waste Management owed a duty to use reasonable care in placing its dumpster so as to avoid injury to nearby property owners.
 
 Id.
 
 We cannot agree with the trial court that the harm alleged — the flooding of nearby properties — is so “unusual, improbable, or extraordinary” a consequence of placing a large, unsecured object on the banks of a drainage ditch that the issue of foreseeability may be resolved as a matter of law. Instead, we find that this case presents at least a jury question as to whether Waste Management acted reasonably under all the circumstances.
 
 Id.; Rolison,
 
 691 So.2d at 444. Because we find a genuine issue of material fact as to whether the duty of reasonable care was breached in this case, we reverse the trial court’s grant of summary judgment on this issue.
 

 3. Cause in Fact; Expert Affidavit
 

 ¶ 16. To establish that the dumpster had in fact caused the flooding dam
 
 *515
 
 age to their properties, the Rhalys offered the affidavit of Dr. George Hammitt as an expert in the field of engineering. Dr. Hammitt’s affidavit stated that he reviewed the deposition testimony taken in the case and the photographs showing the dumpster in the ditch after each of the relevant floods. Dr. Hammitt also stated that he had personally examined the area where the dumpster was placed and the flooding had occurred. Dr. Hammitt concluded that during each flood, the dumpster had become lodged against the downstream State Street bridge, and “trash and debris” had collected around it, causing a “partial blockage” of the ditch under the bridge. Based on his study of the site, the dumpster, and his review of past rainfall patterns and flooding history of the surrounding area, Dr. Hammitt concluded that both the 2002 and 2003 flood events were attributable to this partial blockage of the State Street bridge and that the blockage had caused or intensified the flooding of the Rhalys’ properties. The trial court found Dr. Hammitt’s findings as to causation inadmissible for reasons we shall outline below.
 

 ¶ 17. Mississippi Rule of Evidence 702 states:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of rehable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
 

 The Mississippi Supreme Court has adopted a modified
 
 Daubert
 
 standard that our courts are to apply when ruling on the admission of expert testimony.
 
 Miss. Transp. Comm’n v. McLemore,
 
 863 So.2d 31, 35 (¶ 7) (Miss.2003);
 
 see also Kumho Tire Co. v. Carmichael,
 
 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999);
 
 Daubert v. Merrell Dow Pharms., Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In
 
 McLemore,
 
 the court articulated the modified
 
 Daubert
 
 standard as follows:
 

 Under Rule 702, expert testimony should be admitted only if it withstands a two-pronged inquiry.
 
 Kansas City S. Ry. v. Johnson,
 
 798 So.2d 374, 382 [ (¶ 29) ] (Miss.2001). First, the witness must be qualified by virtue of his or her knowledge, skill, experience or education.
 
 Id.
 
 (citing M.R.E. 702). Second, the witness’s scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue.
 

 Id.
 
 at (¶ 7) (citing M.R.E. 702). Furthermore, “[t]he party offering the testimony must show that the expert has based her testimony on the methods and procedures of science, not merely his subjective beliefs or unsupported speculation.”
 
 Id.
 
 at 36 (¶ 11). Then the trial judge must determine whether the expert testimony “rests on a reliable foundation and is relevant in a particular case.”
 
 Id.
 
 (citing
 
 Daubert,
 
 509 U.S. at 589, 113 S.Ct. 2786). The focus of the trial judge’s analysis “must be solely on principles and methodology, not on the conclusions they generate.”
 
 Id.
 
 at 36-37 (¶ 13).
 

 ¶ 18. Regarding our standard of review, “the admission of expert testimony is within the sound discretion of the trial judge.”
 
 Id.
 
 at 34 (¶ 4). Therefore, the decision of a trial judge will stand “unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.”
 
 Id.
 

 
 *516
 
 ¶ 19. The trial court found Dr. Ham-mitt’s findings as to causation were without any factual basis and therefore inadmissible. The trial court found this because no witnesses had actually observed the dumpster in the ditch blocking the flow of water during either flood event. The trial court also found that, even if it were to accept Dr. Hammitt’s affidavit, Dr. Hammitt only attributed a “partial” blockage of the ditch to the dumpster. The trial court concluded that this was insufficient to establish causation in fact.
 

 ¶20. On appeal, the Rhalys acknowledge that no one had directly observed the dumpster during either of the floods, but they argue that a factual basis was established through circumstantial evidence. The Rhalys cite to the deposition testimony of several witnesses, who testified that in the days after each of the relevant flood events, they observed the dumpster in the ditch, against the bridge, covered with debris. Photographs were also entered into the record, showing a Waste Management dumpster in the ditch at the State Street bridge in the days after the 1983, 2002, and 2003 flood events. The Rhalys argue that was sufficient to create an inference that the dumpster had been present in the ditch at the time of the flooding. They also point to the deposition testimony of DeWitt Rhaly, who stated that he had attempted to cross the State Street bridge during the 2003 flood but was unable to do so because floodwaters had completely overflowed the bridge. DeWitt testified that he noticed an obstruction of the water flow through the ditch at the bridge that he attributed to the dumpster. He acknowledged, however, that during the flood he could not see through the waters, but DeWitt maintained that it was “obvious” to him at the time that the obstruction was caused by a dumpster. After the waters receded, DeWitt observed the Waste Management dumpster in the ditch under the bridge, at the same location as the obstruction he had observed during the flooding.
 

 ¶21. Waste Management argues that no such inference is warranted. It cites to our opinion in
 
 Smith v. City of Gulfport,
 
 949 So.2d 844 (Miss.Ct.App.2007). There, we held that the lay testimony of residents that they had observed some obstructions in a drainage ditch was insufficient to establish that those obstructions had caused a flood.
 
 Id.
 
 at 851-52 (¶¶ 24, 30-32). We find the instant case distinguishable on this point. The sufficiency of the lay testimony, by itself, is not the issue here. Instead, our question is whether the observations of the various witnesses, taken together with Dr. Ham-mitt’s research and personal inspection of the scene, created a sufficient factual basis for the expert opinion.
 

 ¶ 22. On summary judgment, “the evidence presented by the plaintiff must be given the benefit of all favorable inferences that may reasonably be drawn therefrom.”
 
 Partin v. N. Miss. Med. Ctr., Inc.,
 
 929 So.2d 924, 929 (¶16) (Miss.Ct.App.2005). After reviewing Dr. Hammitt’s affidavit and giving the Rhalys the benefit of all reasonable inferences that can be drawn from the deposition testimony of other witnesses, we conclude that a sufficient factual basis existed for Dr. Ham-mitt’s opinion as to causation.
 

 ¶ 23. The trial court also faulted Dr. Hammitt’s causation opinion for relying on a finding of a “partial” obstruction of the ditch, without any further explanation. On appeal, Waste Management asserts that a partial obstruction of a ditch is insufficient to establish causation of a flood; it argues that
 
 Smith
 
 required that an obstruction must be observed not simply to “impede” the flow of water, but must “block” or
 
 *517
 
 completely obstruct it. This, again, misstates our holding in
 
 Smith;
 
 we held that the lay testimony describing some degree obstruction to a ditch was insufficient to establish causation.
 
 Smith,
 
 949 So.2d at 851-52 (¶¶ 24, 30-32). There, the lay witness testimony amounted to “guesswork, speculation or conjecture as to what caused the ditch to overflow.”
 
 Id.
 
 at 851 (¶ 24). Here, Dr. Hammitt’s expert opinion was offered to show that the obstruction observed was sufficiently large to be a substantial factor in causing the floods. Dr. Hammitt stated that he reached this conclusion after observing the scene, taking measurements of the ditch opening under the State Street bridge and of a comparable dumpster, studying the photographs and deposition testimonies of witnesses who had observed the scene after the relevant floods, and analyzing past rainfall patterns and flood history of the area. Nothing in the record suggests that this methodology was flawed or that Dr. Hammitt was not qualified to render such an opinion.
 

 ¶ 24. After a thorough review of the record and Dr. Hammitt’s affidavit, we are convinced that the trial court abused its discretion in finding the expert opinion unsupported by a factual basis or otherwise incompetent on the issue of causation. We therefore find a genuine issue of material fact as to causation, and we likewise find a triable question as to Waste Management’s negligence. Accordingly, we reverse the trial court’s grant of summary judgment and remand this case for further proceedings consistent with this opinion.
 

 ¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Although suit was filed after the 2002 flood, it is undisputed that Waste Management was not served with process until after the 2003 flood. Likewise, there appears to be no direct evidence in die record that Waste Management itself recovered the dumpster from the ditch after the 1983 or 2002 floods, or that it even knew the dumpster had been washed into the ditch on either occasion. Waste Management denies knowledge of either event, and it suggests that the City may have removed the dumpster from the ditch without its knowledge.