LEE, P.J., for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. On June 14, 2000, Wilfredo Figueroa and his wife, Myrna Figueroa, (collectively, the Figueroas) filed a medical-malpractice action in the Harrison County Circuit Court against Dr. Steven Orleans, Dr. Frank Martin, Regional Digestive Specialists, P.C., and The Surgical Clinic of Biloxi, P.A. The Figueroas allege that the negligent care Wilfredo received during June 1998 resulted in permanent injuries. After several continuances, trial was held on the matter from January 21-27, 2009. At the conclusion of the Figueroas’ case, Dr. Martin and the Surgical Clinic were granted a directed verdict. The jury returned a verdict in favor of Dr. Orleans and Regional Digestive Specialists. The trial court subsequently denied the Figueroas’ post-trial motions.
 

 ¶ 2. The Figueroas now appeal, asserting the following issues: (1) the trial court erred in refusing to admit the deposition of Dr. Orleans into evidence; (2) the trial court erred in directing a verdict in favor of Dr. Martin; and (3) the cumulative errors require reversal. Finding no error, we affirm.
 

 FACTS
 

 ¶ 3. Wilfredo contracted Hepatitis C; and his internist, Dr. Randy Roth, sent him to Tulane University Medical Center for evaluation for an experimental treatment program. Dr. Orleans, a gastroen-terologist, was approved to provide the medical clearance for qualification in the Tulane program. Wilfredo first saw Dr. Orleans on March 25,1998. After evaluating Wilfredo, Dr. Orleans determined that he needed to perform an endoscopic retrograde cholangiopancreatogram (ERCP) and an esophagogastrodudenoscopy (EGD). Dr. Orleans discussed the risks
 
 *51
 
 and benefits of the procedures with Wilfredo, who signed the informed-consent documents. These procedures were performed on June 16, 1998, and involved the insertion of a scope with a camera attached to examine the bile ducts, gallbladder, liver, pancreas, esophagus, stomach, and colon. During the procedure, Dr. Orleans observed a meniscus sign, which he testified could indicate the presence of a stone in the gallbladder or sphincter hypertrophy. The radiologist who reviewed the film taken during the ERCP confirmed Dr. Orleans’s observation of a meniscus sign. Dr. Orleans noted in his report that the ERCP detected the presence of sludge in the gallbladder.
 

 ¶ 4. Following the procedures, Wilfredo was kept for observation. During this period, Wilfredo developed severe abdominal pain. Dr. Orleans ordered an x-ray which showed that the gallbladder was not emptying properly, was filled with contrast, and had become distended. Wilfredo was kept overnight for further observation and additional lab tests. The next day, an ultrasound of his abdomen revealed that Wilfredo’s gallbladder was not contracting properly and that there was free fluid in his abdomen. A second x-ray showed that the gallbladder had become more distended since the x-ray the day before. This x-ray also did not show any evidence of a perforation, which was a possible source of Wilfredo’s abdominal pain. A computed tomography (CT) scan also confirmed a distended gallbladder filled with contrast as well as free fluid in Wilfredo’s abdomen. Fearing that Wilfredo’s condition was worsening, Dr. Orleans ordered a surgical consultation with Dr. Martin, a general surgeon.
 

 ¶ 5. Dr. Martin examined Wilfredo, reviewed the test results, and determined that Wilfredo needed exploratory surgery of his abdomen. Dr. Martin thought that Wilfredo might have acute cholecystitis with peritonitis and possible perforated gallbladder. Dr. Martin found Wilfredo’s gallbladder to be enlarged, discolored, inflamed, and bleeding; and he removed it. Dr. Martin noted that Wilfredo’s abdomen was filled with fluid, but he found no evidence of a perforation. The pathology report indicated that the gallbladder exhibited cholecystitis. It was also determined that Wilfredo was suffering from pancreat-itis.
 

 ¶ 6. Following surgery, Wilfredo experienced a lengthy hospitalization and complained of abdominal pain post-discharge. Wilfredo saw different physicians in the years following his surgery for treatment of his abdominal pain. Wilfredo testified that he has been unable to work since his surgery. Wilfredo contends that the ERCP procedure and resulting surgery were unnecessary and resulted in his ongoing health problems.
 

 DISCUSSION
 

 I. DEPOSITION OF DR. ORLEANS
 

 ¶ 7. In their first issue on appeal, the Figueroas contend that the trial court erred in refusing to admit the deposition of Dr. Orleans into evidence. The Figueroas called Dr. Orleans as an adverse witness. During Dr. Orleans’s testimony, the Fi-gueroas’ trial counsel liberally referred to Dr. Orleans’s deposition during questioning. After Dr. Orleans was questioned by his trial counsel and cross-examined again by the Figueroas’ trial counsel, the Figuer-oas’ counsel sought to introduce Dr. Orleans’s entire deposition for purposes of impeachment. The trial court denied the admission of the deposition into evidence but marked it for identification purposes only. At the conclusion of the trial, the Figueroas asked the trial court to introduce excerpts from Dr. Orleans’s deposition in rebuttal. The trial court denied the
 
 *52
 
 request but marked the specific pages for identification purposes only. The Figuer-oas did not call Dr. Orleans or any other witness to testify during rebuttal.
 

 ¶ 8. The admission of deposition testimony is within the sound discretion of the trial court.
 
 Smith v. City of Gulfport,
 
 949 So.2d 844, 848 (¶11) (Miss.Ct.App. 2007). “Only if a substantial right is affected do errors in evidentiary rulings require reversal.”
 
 Bowman v. CSX Transp., Inc.,
 
 931 So.2d 644, 658 (¶ 54) (Miss.Ct.App.2006);
 
 see
 
 M.R.E. 103(a). Rule 32(a)(1) of the Mississippi Rules of Civil Procedure states that a deposition may be used to contradict or impeach the testimony of the deponent as a witness. The deposition was used extensively in an attempt to impeach Dr. Orleans. According to the record, the Figueroas used the deposition of Dr. Orleans over fifteen times during Dr. Orleans’s examination, including several instances where Dr. Orleans read passages from his deposition. The jury heard the pertinent information contained in the deposition through the Fi-gueroas’ liberal use of the deposition during their case-in-chief. We cannot find that the trial court abused its discretion in denying the Figueroas’ request to admit Dr. Orleans’s deposition into evidence.
 

 ¶ 9. Regardless of whether the deposition was admitted into evidence or for identification purposes only, the jury would not have been allowed to take the deposition into the jury room during deliberations.
 
 See
 
 URCCC 3.10. This issue is without merit.
 

 II. DIRECTED VERDICT IN FAVOR OF DR. MARTIN
 

 ¶ 10. In their second issue on appeal, the Figueroas argue that the trial court erred in directing a verdict in favor of Dr. Martin. The Figueroas contend that Dr. Martin failed to exercise reasonable care in his decision to perform the exploratory surgery and gallbladder removal. Specifically, the Figueroas claim that their expert, Dr. Robert H. Resnick, should have been allowed to testify concerning the standard of care with regard to Dr. Martin’s decision to perform surgery. Dr. Resnick was accepted as an expert in gastroenterology, not general surgery.
 

 ¶ 11. The grant or denial of a directed verdict is reviewed de novo.
 
 Windmon v. Marshall,
 
 926 So.2d 867, 872 (¶ 20) (Miss.2006). “If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted.”
 
 Id.
 
 (quoting
 
 Entergy Miss., Inc. v. Bolden,
 
 854 So.2d 1051, 1055 (¶ 7) (Miss.2003)). However, “[o]ur rules and case law allow for questions to be removed from the jury’s consideration when there exists no factual question for it to resolve.”
 
 Bolden,
 
 854 So.2d at 1055 (¶ 8).
 

 ¶ 12. To establish a prima facie case for medical negligence, a plaintiff must prove: (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant’s breach of his duty was a proximate cause of the plaintiffs injury; and (4) the plaintiff was injured as a result.
 
 Burnham v. Tabb,
 
 508 So.2d 1072, 1074 (Miss.1987). Expert testimony is required to “identify and articulate the requisite standard that was not complied with, [and] the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.”
 
 Banter v. Gorman,
 
 605 So.2d 805, 809 (Miss.1992). Although there is no per se rule that an expert in a particular medical specialty
 
 *53
 
 may only testify regarding that specialty, the expert must be sufficiently familiar with the standard of care by knowledge, skill, experience, training, or education as required by Rule 702 of the Mississippi Rules of Evidence.
 
 Troupe v. McAuley,
 
 955 So.2d 848, 856 (¶ 22) (Miss.2007).
 

 ¶ 18. Dr. Resnick admitted that: he was not being offered as an expert in general surgery; he did not possess any surgical credentials or hold any surgical board certifications; he did not follow current surgical literature; he never practiced under the standard of care owed by a surgeon to a patient; and he was never in a position to decide whether or not to perform surgery. During his testimony, Dr. Resnick failed to articulate the applicable standard of care in regard to Dr. Martin and how Dr. Martin breached that standard. Dr. Resnick’s testimony consists of statements concerning what he would have done in Dr. Martin’s position, even though he has no surgical expertise. Dr. Resnick also fails to causally connect any purported breach to a particular injury Wilfredo received. Without the testimony of Dr. Resnick, the Figueroas had no other testimony or evidence regarding Dr. Martin’s purported negligence. We find that the trial court properly granted a directed verdict in favor of Dr. Martin. This issue is without merit. ^
 

 III. CUMULATIVE ERROR
 

 ¶ 14. In their final issue on appeal, the Figueroas assert that the cumulative errors necessitate reversal. Finding that each of the Figueroas’ arguments is without merit, we consequently do not find any cumulative error that would necessitate a reversal.
 

 ¶ 15. We note that the Figueroas also claim that the approximately thirty-minute deliberation by the jury evidenced a lack of deliberate judgment. However, this Court has held that there is no formula to determine a time frame for a jury to deliberate.
 
 Kent v. Baptist Mem’l Hosp. N.
 
 Miss.,
 
 Inc.,
 
 853 So.2d 873, 882 (¶ 36) (Miss.Ct.App.2003).
 

 ¶ 16. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.