# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00973-COA

WILLIAM HENSON, INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF BONITA G.
HENSON, AND THE ESTATE OF BONITA G.
HENSON

APPELLANTS

v.

GRENADA LAKE MEDICAL CENTER

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/11/2015 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | CARLOS E. MOORE |
| | TANGALA L. HOLLIS |
| | DARRYL ANTHONY WILSON |
| ATTORNEYS FOR APPELLEE: | ROBERT J. DAMBRINO III |
| | ASHLEY N. LANE |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT FOR DEFENDANTS |
| DISPOSITION: | AFFIRMED - 10/25/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1. Bonita Henson fractured her left ankle when she fell while she was a patient at Grenada Lakes Medical Center (GLMC). Henson filed a medical malpractice claim against GLMC, alleging that its nurses failed to prevent her from falling and failed to provide appropriate wound care, which she alleges led to an infection in her ankle and ultimately required amputation of her left leg below her knee. The circuit court granted GLMC's

motion for summary judgment because Henson's only expert witness—a registered nurse—could not testify as to causation. We agree that GLMC was entitled to summary judgment and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Henson was admitted to GLMC on June 22, 2013, due to complaints of chronic diarrhea and various other ailments. Hospital staff apparently assessed her to be a "fall risk" based on her physical condition. On June 30, Henson was being weighed on a standing scale at the hospital when she fell and dislocated and fractured her ankle. Hospital staff wrapped her ankle and put it in a splint or a plaster cast. The next day, she was transferred to Baptist Memorial Hospital–North Mississippi for orthopedic care.

¶3. On July 3, Henson underwent surgery on her ankle. When her splint or plaster cast was removed, medical staff noted fecal matter on the splint and a blood blister on her leg. Henson was moved to a long-term care facility in Greenwood on July 9. On July 25, Henson was transferred back to Baptist Memorial Hospital with a diagnosis of a staph infection in her wound. On August 3, Henson was transferred to the University of Mississippi Medical Center (UMMC) in Jackson. Her records indicate that on August 5, physicians noted a "wound breakdown with exposed hardware and necrotic tissue." On August 8, Henson's left leg was amputated below her knee.

¶4. Henson filed a complaint against GLMC and UMMC on May 6, 2014, in the Circuit Court of Grenada County.[1] She alleged that GLMC negligently allowed her to fall and

---

[1] UMMC was dismissed as a defendant by agreed order on July 3, 2014.

fracture her ankle and failed to provide proper wound care, which allegedly led to an infection and the amputation of her lower left leg.[2]

¶5. On April 7, 2015, GLMC moved for summary judgment, arguing that Henson's only designated expert (Rita Wray, RN) failed to address and was not competent to testify as to the alleged causal connection between Henson's injuries and GLMC's allegedly negligent treatment. In response, Henson argued that Wray's opinions were sufficient to survive summary judgment. The substantive portion of Wray's affidavit states as follows:

> I opine that the GLMC staff failed to provide adequate safety measures to prevent Henson's fall.
>
> The care rendered is not consistent with recognized national standards of care and professional performance. The nursing staff failed to exercise the degree of knowledge, skill and diligence required in their nursing management of Mrs. Bonita Henson.
>
> In my opinion, there is evidence of breach of duty or departure from recognized standard of care. The significant nursing action—failure to provide adequate safety measures was inconsistent with her needs and failed to meet the standard of care required in the field of nursing.
>
> My opinion is based on the review of the medical records, my academic preparation, knowledge, skill, experience and expertise in the field of nursing.
>
> Finally, I aver that all of my opinions are based upon a reasonable degree of certainty, as it relates to nursing negligence.

¶6. On June 11, 2015, the circuit court granted GLMC's motion for summary judgment on the ground that Wray could not testify about the causation of Henson's injuries, and therefore Henson could not establish a causal connection between any alleged breach of the

---

[2] Henson passed away on July 28, 2014, and her husband and her estate were later substituted as plaintiffs. For ease of reading, we simply refer to the plaintiff as "Henson" (or "she") and refer to "her" claims, injuries, etc.

3

standard of care and her injuries. Henson filed a timely notice of appeal.

**DISCUSSION**

¶7. We review the circuit court's grant of summary judgment de novo. *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 649 (¶11) (Miss. 2009). In ruling on a motion for summary judgment, the circuit court must view the evidence in the light most favorable to the non-moving party, *id.*, but the non-moving party must be diligent and may not rest upon mere allegations in pleadings. *See Stuckey v. The Provident Bank*, 912 So. 2d 859, 868 (¶¶19-21) (Miss. 2005). "Summary judgment properly may be granted where 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Vaughn*, 20 So. 3d at 649 (¶11) (quoting M.R.C.P. 56(c)).

¶8. Our Supreme Court has summarized that

> [i]n order to establish a prima facie case of medical negligence, [a plaintiff] must prove that (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury[;] and (4) the plaintiff was injured as a result.

*Id.* at 650 (¶15) (quoting *McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 180 (¶10) (Miss. 2009)). Furthermore, "medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience." *Id.* (quoting *Coleman v. Rice*, 706 So. 2d 696, 698 (Miss. 1997)). And although a nurse may be competent to

4

testify as to some issues in a medical negligence case, our Supreme Court has "explicitly [held] that nurses cannot testify as to medical causation." *Id.* at 652 (¶20) (reasoning that "nurses are not qualified to make medical diagnoses or attest to the causes of illnesses").

¶9. Henson argues that Wray was qualified to testify that nursing negligence was the cause of Henson's fall and that "[h]er testimony [was] not . . . offered to establish *medical causation or diagnosis.*" GLMC responds that Henson cannot establish causation without competent expert testimony on the issue of medical causation. GLMC also argues that even Wray's opinion concerning an alleged breach of the standard of care applicable to nurses is insufficient to support a claim of medical negligence because she fails to describe the standard of care or how it was breached—she simply asserts that the care rendered was not consistent with some unarticulated standard. We address these issues in turn.

## I. Causation

¶10. As discussed above, in order to survive summary judgment, Henson must produce competent evidence that GLMC staff breached a duty of care and that the breach was a proximate cause of Henson's injury. "When proving [the] elements in a medical malpractice suit, expert testimony must be used. Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Hubbard v. Wansley*, 954 So. 2d 951, 957 (¶12) (Miss. 2007) (quoting *Barner v. Gorman*, 605 So. 2d 805, 908 (Miss. 1992)).

¶11. In *Vaughn*, the Mississippi Supreme Court "explicitly [held] that nurses cannot testify

as to medical causation" "because nurses are not qualified to make medical diagnoses or attest to the causes of illnesses." *Vaughn*, 20 So. 3d at 652 (¶20). Thus, it is clear that Wray cannot testify as to whether an alleged deviation from the standard of care caused Henson's ankle to become infected or resulted in the amputation of her lower leg. Indeed, *Vaughn* is close on point, as the plaintiff in that case also alleged that negligent nursing care led to a staph infection. *See id.* at 650, 652 (¶¶14, 20). The Court specifically held that a nurse was not competent to testify as to when the staph infection developed or its underlying cause. *See id.* at 652 (¶¶20-21). Likewise in this case, Wray simply is not competent to testify that negligent nursing care caused a staph infection, much less that it ultimately required the amputation of Henson's lower leg.

¶12.    Consistent with *Vaughn*'s holding, Wray does not opine that any negligence on the part of GLMC caused any of Henson's injuries. As noted above, Henson argues that Wray's testimony was offered only to establish that GLMC's negligence caused Henson's fall, not to establish medical causation. But that simply leaves Henson without any proof of medical causation. Wray's affidavit acknowledges that Henson's staph infection was not diagnosed until more than three weeks after she left GLMC, during which time she had been treated at a second hospital and spent sixteen days at a long-term care facility in Greenwood. Henson's lower leg was amputated at a third hospital more than five weeks after she left GLMC. Henson offered no evidence that the infection or subsequent amputation were in any way causally related to the allegedly negligent care she received at GLMC, and any claim based on those injuries fails as a matter of law for that reason alone.

¶13. Perhaps Henson is arguing that she experienced some pain and suffering as a result of her fractured ankle *by itself* and that expert testimony is not required to draw a causal connection between the alleged negligence, the fall, and the fracture. But even if this argument were correct—a point that we need not and do not decide in this appeal—Henson's claim would still fail because Wray's opinions concerning the standard of care and breach are also insufficient to survive summary judgment.

## II.     Alleged Breach of the Standard of Care

¶14.     "The success of a plaintiff in establishing a case of medical malpractice rests heavily on the shoulders of the plaintiff's selected medical expert." *McGee v. River Region Med. Ctr.*, 59 So. 3d 575, 578 (¶9) (Miss. 2011) (quoting *Estate of Northrop v. Hutto*, 9 So. 3d 381, 384 (¶10) (Miss. 2009)). "[A]n expert must articulate the standard of care that should have been applied in a particular case as an objective standard in order to establish the duty owed to the patient." *Maxwell v. Baptist Mem'l Hosp.-DeSoto Inc.*, 958 So. 2d 284, 289 (¶24) (Miss. Ct. App. 2007). In addition, the expert must articulate *how* that standard of care was breached. *See, e.g.*, *Figueroa v. Orleans*, 42 So. 3d 49, 53 (¶13) (Miss. Ct. App. 2010); *Estate of Deiorio ex rel. Deiorio v. Pensacola Health Tr. Inc.*, 990 So. 2d 804, 807 (¶10) (Miss. Ct. App. 2008).

¶15.     As set out above (*see supra* ¶5), other than reciting some basic underlying facts, Wray's affidavit simply offers conclusory assertions that "the GLMC staff failed to provide adequate safety measures to prevent Henson's fall" and that "[t]he care rendered [was] not consistent with recognized national standards of care and professional performance." Wray

7

does not articulate what sort of "safety measures" GLMC "failed to provide." Nor does she articulate applicable "recognized national standards of care and professional performance" or how those standards were allegedly breached. She simply asserts that the nurses at GLMC failed in some unarticulated fashion to live up to an unarticulated standard of care. "A conclusory expert affidavit that fails to explain the underlying 'how, when, and why' is insufficient to withstand summary judgment." *Gray v. Dimitriades*, No. 2014-CA-01106-COA, 2016 WL 3153735, at *6 (¶29) (Miss. Ct. App. June 7, 2016) (quoting *Perez v. Univ. of Miss. Med. Ctr.*, 75 So. 3d 609, 611-12 (¶¶13, 16) (Miss. Ct. App. 2011)). As Wray's affidavit does not even attempt to articulate the applicable standard of care or how it was breached, it was not sufficient to create a genuine issue of material fact on those issues or to defeat summary judgment.

**CONCLUSION**

¶16. For the reasons discussed above, Henson cannot pursue any claim related to her infection or amputation because she presented no competent evidence of a causal connection between those injuries and the alleged negligence of GLMC. Moreover, Henson's medical negligence claim fails as a matter of law because her only expert witness offered only conclusory assertions and failed to articulate the applicable standard of care or how it was breached. Accordingly, the circuit court properly granted summary judgment in favor of GLMC.

¶17. **THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

8

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**