# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CT-00686-SCT

*STEPHANIE TILLMAN,*
*A MINOR, BY AND THROUGH*
*HER LEGAL GUARDIAN,*
*THERESA MIGUES*

*v.*

*DAVID SINGLETARY*
*AND STACY POWE*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/1998 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT H. TYLER |
| | MICHAEL E. BRUFFEY |
| ATTORNEYS FOR APPELLEES: | BRITT R. SINGLETARY |
| | TINA ROSE SINGLETARY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 11/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. This action for negligence arises from a boating accident in Harrison County. The circuit court rendered partial directed verdicts in favor of each of the two defendants, and the jury found for the defendants on the remaining issues. A divided Court of Appeals affirmed in part and reversed and remanded in part, finding that a jury instruction on unavoidable

accident was improperly given. *Tillman ex rel. Migues v. Singletary*, 2001 WL 268246 (Miss. Ct. App. 2001). After granting certiorari, we affirm in part and reverse and remand in part.

**FACTS**

¶2. Singletary and Powe were boating in Singletary's 115-horsepower motorboat on a sunny weekend day of water activity on the busy Tchoutacabouffa River. Powe was Singletary's employee, but this outing was not work related. After a stop for a social visit, Powe asked for and received Singletary's permission to take the helm. Powe had never driven the boat, but had some prior experience driving powerboats. Powe set off with Singletary acting as his look-out and adviser.

¶3. As he navigated the river, Powe soon found himself trailing a pair of inner tube riders being towed by another boat some 200 yards ahead. The "tubers" fell off at the edge of a sharp bend in the river, and Powe stood at the helm to get a better view. The lead boat was turning left to pick up its fallen tubers, another boat was coming up from behind Powe, and jet skis were approaching from the opposite direction on his port side, all as Powe rounded the sharp bend in the river.

¶4. Singletary said he advised Powe to pass the lead boat on its right side, toward the river bank. Powe said he slowed the boat to 10 to 12 knots. As he attempted to go around the lead boat, the impact of the other boats' wake caused his gamy knee to collapse. Powe fell into the boat, away from the steering wheel. Singletary testified that the force of these events almost threw him off the boat and pinned him against the passenger side of the boat. After the boat

2

had been out of control for some fifteen seconds, Singletary managed to grab the steering wheel and shut down the motor. Obviously, there was no cut off switch to the engine attached to the operator. During all this, however, the boat had careened into the roped-off swimming area of a private lot, where it hit twelve-year-old Stephanie Tillman. The youth suffered multiple lacerations of her upper left arm and shoulder which left permanent scarring. Tillman said she saw Singletary at the controls of the boat before she was hit.

¶5.	Powe testified he never saw the tethered wooden swimming platform at the heart of the swimming area. Singletary said he knew from experience that the swimming area was there, but it could not be seen by Powe from the direction his boat made the "blind curve." Powe was given a sobriety test and registered a .025 blood alcohol level. Singletary was not tested for alcohol.

¶6.	Powe's knee had been injured three times. The first injury required surgery. Surgery was recommended after the second injury, but was not done. At the time of the accident, Powe was recuperating from a third knee injury which occurred eight months before. On that occasion Powe's knee locked, causing him to fall to the ground.

¶7.	Tillman sued Powe and Singletary for negligence in the operation of the boat. The complaint also charged Singletary with negligent entrustment of his boat to Powe. The circuit court rendered a directed verdict in favor of Singletary on the issue of negligent entrustment and in favor of both defendants on the issue of punitive damages. The circuit court submitted the defendants' unavoidable accident instructions to the jury and refused to grant an instruction that would have allowed the jury to find Singletary liable for negligent supervision. The jury

was given a plaintiff's instruction that both defendants could have been negligent by operating the boat at different times of the incident, but was also given a conflicting form of jury verdict that asked the jurors to determine which of the defendants was "the operator" of the boat on the day in question. The jury returned a verdict for both defendants, finding that neither defendant was negligent under the given instructions.

¶8.     The Court of Appeals found that giving Powe an unavoidable accident instruction was reversible error because he operated a power boat on a crowded river with knowledge of his bad knee. It also affirmed the directed verdict for boat-owner Singletary on the issues of negligent entrustment and punitive damages. Further, Singletary could not be liable for negligent supervision, apparently because that theory was subsumed by negligent entrustment. All other issues were deemed moot for purposes of the appeal.

**DISCUSSION**

**I.     WHETHER UNAVOIDABLE ACCIDENT JURY INSTRUCTIONS SHOULD HAVE BEEN GIVEN.**

¶9.     An unavoidable accident is "an occurrence which was not intended, and, which, under all the circumstances, could not have been foreseen or prevented by the exercise of reasonable precautions."*Buford v. Riverboat Corp. of Miss.Vicksburg*, 756 So. 2d 765, 770-71 (Miss. 2000) (quoting William L. Prosser, § 29, at 140 (4th ed. 1971) (footnote omitted)). An unavoidable accident instruction should be used with caution. *Buford*, 756 So. 2d at 770.

¶10.    Here, the accident was avoidable. Even if Powe's knee had not locked up, Powe was guilty of negligence because he was going too fast under the circumstances (a bend in the river,

4

other boat traffic, and people on jet skis), and he did not have the boat under proper control. Furthermore he was operating the boat without using the kill switch. A reasonably prudent boat driver should have known that he would be encountering the wakes of other boats and should have operated the boat in such a manner that the boat was able to negotiate the wakes without incident. Singletary testified that the force of hitting the other boat's wake almost threw him off the boat and pinned him against the passenger side of the boat. It is therefore clear that the boat was not under proper control.

¶11. Nor can Singletary benefit from an unavoidable accident instruction. As discussed in the next issue, the jury should have been instructed to consider whether Singletary was negligent in failing to supervise Powe properly.

## II. WHETHER A JURY INSTRUCTION ON NEGLIGENT SUPERVISION SHOULD HAVE BEEN GIVEN.

¶12. Tillman offered, but was refused, a jury instruction on a theory of negligent supervision of Powe by Singletary, the more experienced boatman. Singletary was a more experienced boater, and he had a superior knowledge of the river and its riparian usage. Powe described Singletary as his "back seat driver." Singletary advised Powe how to go around the lead boat.

¶13. A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: (a) in giving improper or ambiguous orders or in failing to make proper regulations; or (b) in the employment of improper persons or instrumentalities in work involving risk or harm to others; (c) in the supervision of the activity; or (d) in permitting, or failing to prevent, negligent or other tortious

5

conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control. Restatement (Second) of Agency § 213 (1958).

¶14.   A party has the right to embody its theories of the case in the jury instructions provided there is testimony and/or evidence to support it, and if the instructions are conditioned upon the jury finding that such facts existed. *Reese v. Summers*, 792 So. 2d 992, 994 (Miss. 2001). There was a sufficient basis of facts for the granting of plaintiff's instruction P-5, the instruction on negligent supervision. The trial court erred in failing to put this instruction to the jury.

### III.   WHETHER IT WAS ERROR TO GRANT A DIRECTED VERDICT IN FAVOR OF SINGLETARY ON THE ISSUE OF NEGLIGENT ENTRUSTMENT.

¶15.   Negligent entrustment is a theory of liability which may be summarized as follows:

> One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Sligh v. First Nat. Bank of Holmes County*, 735 So.2d 963, 968-69 (Miss. 1999).

¶16.   Powe was twenty-five years old at the time of the accident. Although he had not previously driven Singletary's boat, he testified that he had prior experience driving power boats, sailboats and john-boats. Evidence supporting the circuit court's denial of the instruction was the fact that Powe had prior boating experience. Furthermore, no evidence was submitted which showed that Singletary had knowledge that Powe's knee could buckle under.

6

Clearly the foreseeability element is not met. Thus, Singletary cannot be held accountable under a theory of negligent entrustment. We affirm the circuit court's decision to direct a verdict in favor of Singletary on negligent entrustment.

### IV. WHETHER THE CIRCUIT COURT ERRED IN GRANTING A DIRECTED VERDICT IN FAVOR OF SINGLETARY ON THE ISSUE OF PUNITIVE DAMAGES.

¶17. Tillman appealed the directed verdict on the issue of punitive damages insofar as Singletary was concerned. The basis for punitive damages is the testimony of a single witness that Singletary was staggering and red-eyed and appeared drunk after the accident. On cross-examination, however, this witness said that she got no closer than thirty-five feet to Singletary. Powe and Singletary testified that Singletary had consumed a minimal amount of alcohol, and later witnesses offered substantiation during the presentation of defendants' case.

¶18. Punitive damages may be recovered for willful and intentional wrong and for such gross and reckless negligence as is equivalent to willful wrong. A trial court's decision not to send punitive damages to the jury will only be reversed upon a finding of an abuse of discretion. *Hurst v. Southwest Miss. Legal Servs. Corp.*, 708 So. 2d 1347, 1351 (Miss. 1998). The circuit court did not abuse its discretion in directing a verdict for Singletary on the issue of punitive damages.

### CONCLUSION

7

¶19. In summary, we affirm in part and reverse in part the Court of Appeals' judgment. We affirm the circuit court's grant of directed verdicts on the issues of negligent entrustment and punitive damages. We reverse the circuit court's judgment and remand for a new trial consistent with this opinion as to both Powe and Singletary because the circuit court improperly granted the unavoidable accident instruction and improperly refused a jury instruction on the negligent supervision issue.

¶20. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, C.J., EASLEY AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER, J. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, P.J., AND IN PART BY WALLER, J. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶21. While I concur with the majority as to Issues I, II, and IV, I dissent as to Issue III. However, I choose to specifically write as to Issue I which concerns the unexpected or unavoidable jury instruction. Simply put, the operator could have powered down and put the boat in neutral and waited for traffic ahead to clear and/or if he was required or instructed and actually had the "kill switch" attached to his body, the "kill switch" would have killed the motor. Singletary instructed Powe to go around the right of the lead boat instead of instructing him to power down. Based on the record and as found by the Court of Appeals, the unexpected or

unavoidable accident jury instruction should not have been given. For this reason, I concur in part and dissent in part.

¶22.    An unavoidable accident is one that could not have been foreseen or prevented by the exercise of reasonable precaution. ***Buford v. Riverboat Corp. of Miss.-Vicksburg***, 756 So.2d 765, 771 (Miss. 2000). Only if the accident is truly "unavoidable," should an unexpected or unavoidable accident jury instruction be given. ***Id.*** (citations omitted). Such instructions should rarely be given. ***Pope v. Sanders***, 217 So.2d 1, 3 (Miss. 1968).

¶23.    Based on the record, the accident is not one that could be characterized as "unavoidable," since circumstances clearly show that the defendants could have foreseen and/or prevented the boating accident. Both Singletary and Powe had been drinking. Powe had recurring knee problems which presented problems with his operation of the boat. Singletary knew of Powe's knee problems. Singletary was very familiar with that area of the river and knew about the swimming area. There was no "dead man switch," or cut off switch, for the engine on the boat. The majority even acknowledges that "there was no cut off switch to the engine attached to the operator." Had there been a "dead man switch" then the injuries sustained by the plaintiff may have been diminished and disfigurement limited as the engine would have been killed and the propellor would have stopped within seconds after Powe lost control of the boat.

¶24.    It is absurd to think that the fact that Powe's knee buckled would be enough for an unexpected or unavoidable jury instruction. Powe's knee buckling is not an unforeseeable or unpreventable event, when both defendants knew of the knee problem but chose to disregard

9

the effect it may have on Powe's operation of the boat. Singletary clearly supervised Powe in the operation of the boat (as stated by the majority). Powe described Singletary as a back seat driver, and Singletary advised Powe how to go around the lead boat. He could have advised him to power down into neutral and await the departure of the lead boat. Powe worked for Singletary. To say he did not know about his unstable knee condition would be a jury question as enough evidence was submitted to allow it. Further, the majority points out that the dead man switch was not attached to the operator, and Singletary obviously did not instruct or require it to be attached. If the dead man switch was attached and the operator fell, the engine is immediately killed, and the boat would not have operated for 15 seconds and lacerating a girl in the swimming area. The propeller stops upon the activation of the kill switch. A negligent entrustment instruction should have been submitted to the jury based on the evidence given. Likewise, it is "foreseeable" that a boat operator who is not properly equipped with a "dead man switch" may be involved in an accident such as this because he is unable to stop the engine once he has lost control of the boat. Clearly, the circumstances presented do not support an unexpected or unavoidable accident jury instruction.

¶25.    Accordingly, I concur in part and dissent in part.

**WALLER, J., JOINS THIS OPINION IN PART.**


**COBB, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶26.    I agree with the majority's affirmance of the decision of the circuit court and the Court of Appeals to grant a directed verdict to Singletary on the issue of negligent entrustment and

10

to both Singletary and Powe on the issue of punitive damages. However, I respectfully dissent as to the majority's decision to reverse the jury verdict and remand for a new trial.

¶27. In my view, the Court of Appeals was correct in its decision to affirm the trial court's decision on all issues as they related to Singletary. I respectfully disagree with the Court of Appeals majority's decision to reverse and remand for a new trial of Powe, as I believe Chief Judge McMillin's dissent correctly states the law as applied to the facts regarding Powe, and I adopt his opinion in that regard, as follows:

> I respectfully dissent as to the majority's decision to reverse the jury verdict in Powe's favor because the jury was instructed on the principle of unavoidable accident. The unavoidable accident instruction was properly given, since it was both a correct statement of the law and was supported by evidence in the record. See *Turner v. Temple*, 602 So.2d 817, 823 (1992). Powe's theory was that a sudden and unforeseeable collapse of his knee caused him to fall and lose control of the boat and that this was the proximate cause of the accident, as opposed to the various theories of negligence advanced by the plaintiff.
>
> The majority finds the instruction improper, not because it incorrectly recites the applicable law, but because "Powe was aware of his history of reoccurring knee problems, but chose to operate the power boat on a crowded river while standing." With respect to my colleagues in the majority, the question of whether, based on his prior medical history, Powe should have anticipated and taken greater precaution against a sudden physical collapse of his knee was **a question of fact to be resolved by the jury**. [emphasis mine] The instruction fully accommodated that proposition, since it required the jury to find as a matter of fact that the collapse was "unexpected and unforeseeable" before it could apply the concept of unavoidable accident. There was substantial evidence presented concerning the condition of Powe's knee, but there was no evidence that he had ever before experienced a sudden collapse of the nature he described to the jury. On the evidence in this record, a finding of fact that Powe had no good reason to think that his knee would unexpectedly buckle and cast him away from the boat's controls was entirely within the realm of the jury's discretion. I can see no difference between this case and one where a person driving a vehicle suddenly faints or is subjected to a disabling seizure and loses control of his vehicle, resulting in an accident. In such circumstance, a sudden,

11

unanticipated, and unavoidable event is the proximate cause of the accident and thus does not give rise to a claim for negligence.

The instruction properly recited the applicable law and conditioned a result favorable to Powe on the jury's resolving the critical disputed issues of fact in his favor. That is apparently what the jury did. Whether that verdict was against the weight of the evidence is another matter, but that question cannot be resolved by considering the manner in which this jury was instructed. It was not error to submit Powe's theory of the case to the jury through an unavoidable accident instruction.

*Migues ex rel. Tillman v. Singletary*, 2001 WL 268246, at *4 (Miss. Ct. App. 2001) (McMillin, C.J., dissenting).

¶28.   There is no question that this was a tragic accident, and Tillman suffered serious injuries.  However, she presented her case before a Harrison County Circuit Court judge and jury, and in my view the judge properly granted directed verdicts on the issues of negligent entrustment and punitive damages.  The jury heard the evidence and found for Singletary and Powe on the issues of negligent supervision and unavoidable accident.  I would reverse the Court of Appeals with regard to its decision to reverse and remand in part, and would affirm the trial court's judgment in its entirety.

**SMITH, P.J., JOINS THIS OPINION.  WALLER, J., JOINS THIS OPINION IN PART.**