MODIFIED OPINION ON REHEARING
MAXWELL, J.,
for the Court:
¶ 1. The motion for rehearing is denied. The court’s original opinion is withdrawn, and this opinion is substituted in lieu thereof.
■ ¶ 2. T.C.B. Construction Company, Inc. (TCB) sued W.C. Fore Trucking, Inc. (Fore) for breach of contract. The suit was based on Fore’s non-payment for work TCB performed removing debris south of Highway 53 in Harrison County, Mississippi, after Hurricane Katrina. Fore disagreed that the subcontract between the two companies was modified to include this area. Although the jury found Fore had modified the subcontract, it awarded TCB only $3,577,583.34 in damages, which in effect compensated TCB for only half of the work it undisputably performed. On appeal, TCB argues it was entitled, as a matter of law, to $6,634,436.69, based on the undisputed amount of debris it removed. Specifically, TCB claims it was entitled to summary judgment or a directed verdict in its favor because Fore was estopped from denying the subcontract’s modification.
¶ 3. Under Mississippi’s quasi-estoppel doctrine, a party cannot claim the benefits of a transaction and at the 'samé time repudiate its obligations. Fore accepted the benefits of the modified subcontract with TCB, billing Harrison County (County) for each cubic yard of debris TCB removed south of Highway 53. And Fore admits that neither it nor any other subcontractor besides TCB performed the work for which Fore was compensated. Based on Mississippi’s quasi-estoppel doctrine, we find Fore is estopped from denying it owed TCB any portion of the approximately $8.5 million it collected from the County for TCB’s work south of Highway 53. Thus, the. circuit, court erred by submitting the issues of modification and damages to the jury. We reverse the circuit court’s $3,577,583.34 judgment and render judgment in TCB’s favor in the amount of $6,634,436.69.
¶ 4. The circuit court correctly awarded TCB prejudgment interest of eight percent. But we find this interest should have been awarded from the date of breach, not the date TCB filed its complaint. Therefore, we remand to the circuit court to calculate prejudgment interest. We affirm the circuit court’s directed verdict in favor of Fore on the issues of punitive damages and attorney’s fees.
BACKGROUNDS FACTS
¶ 5. On August 29, 2005, the County began clearing debris left in the wake of Hurricane Katrina from its right of ways. It divided the county into three zones. Fore won the contract to remove debris in Zone 2. The County agreed to pay Fore $10.64 per cubic yard of debris removed from this zone.
¶ 6. On September 16, 2005, Fore entered into a subcontract with TCB to haul debris in Zone 2 north of Highway 53 for $8.90 per cubic yard. The subcontract required TCB to send Fore daily reports, referred to as “truck tickets.” The subcontract also had an express good-faith clause, which stated “the contract can and will be modified based upon facts and circumstances of all debris removal.”
*757 ¶ 7. TCB immediately began clearing debris in Zone 2 north of Highway 53. Nine days later, on September 25, 2005, TCB began clearing debris south of Highway 53. TCB’s representatives testified TCB moved south of Highway 53 at the request of Fore’s principal, W.C. Fore (W.C.). TCB continued moving south, eventually clearing debris to 1-10. Though W.C. denied his company had asked TCB to clear south of Highway 53, after September 25, neither Fore nor any other subcontractor cleared any debris from this area. It is undisputed that TCB was the only company that removed debris south of Highway 53.
¶8. An independent accounting firm, R.W. Beck & Associates (Beck), oversaw the debris removal. Each day Beck inspected the trucks removing the debris. It also calculated the cubic yardage and verified the location from which the debris had been removed. Once Beck approved the truck tickets, it sent copies to Fore. TCB also sent Fore weekly invoices. Fore utilized the figures contained in TCB’s invoices to create its own invoices, which Fore submitted to the County for payment. Beck verified the invoices and told the County these invoices should be paid; and the County, in turn, looked to the Federal Emergency Management Agency (FEMA) for funds to pay Fore’s invoices.
¶ 9. Fore claims in March 2006 it first learned TCB had been hauling debris from south of Highway 53. Although Fore stopped paying TCB’s invoices at this point, it does not dispute it billed the County for all of the debris TCB hauled south of Highway 53. And the County paid Fore in full for each invoice submitted. In total, Fore received $12,292,176.10 from the County based on debris cleared by TCB. This represents approximately 1,155,280 cubic yards, at $10.64 per cubic yards. TCB claims it is entitled to $10,273,125.77 of that money, or $8.90 for each yard it undisputably hauled. Fore’s payments to TCB totaled only $3,638,689.08, a difference of $6,634,436.69.
PROCEDURAL HISTORY
¶ 10. TCB sued Fore for breach of contract. To recover for breach of contract, a plaintiff has the burden to prove by preponderance of the evidence: (1) the existence of a valid and binding contract, (2) the defendant’s breach of the contract, and (3) resulting monetary damages. Warwick v. Matheney, 603 So.2d 330, 336 (Miss.1992). TCB argued: (1) the subcontract, in which Fore promised to pay TCB $8.90 for each cubic yard of debris it removed, was orally modified to include debris removal south of Highway 53 as well as north of Highway 53; (2) TCB removed debris south of Highway 53 on Fore’s behalf, but despite having billed the County for this work, Fore did not pay TCB; and (3) TCB suffered damages of $6,634,436.69. Fore countered that the subcontract only concerned the area north of Highway 53 and was never modified. But Fore conceded it had billed the County for TCB’s work south of Highway 53, received payment in full, and did not compensate TCB. Fore argued TCB was only entitled to $3,117,958 for the approximately 350,332 cubic yards TCB cleared north of Highway 53. Fore counterclaimed for the difference between what it paid TCB ($3,638,-689.08) and what TCB earned north of Highway 53 ($3,117,958.09)—an alleged “overpayment” of $520,730.99.
¶ 11. Before trial, TCB moved for summary judgment. It argued there were no disputed facts concerning the modified subcontract’s existence because Fore actually utilized TCB’s invoices to bill the County for debris removed south of Highway 53, thus proving the subcontract had been modified. The circuit judge denied *758 summary judgment, finding W.C.’s denial of the modification was sufficient to create a disputed fact issue. At the close of trial, TCB moved for a directed verdict. TCB argued it was entitled to a judgment as a matter of law in the amount of $6,684,436.69 because W.C.’s contradictory testimony was not sufficient to overcome the completion of the contract and Fore’s acceptance of the work and money. The circuit judge denied the request for a directed verdict.
¶ 12. The circuit court submitted the issues of the modified subcontract’s existence, breach, and the amount of damages to the jury. TCB questioned whether the jury should decide the amount of damages and argued that if the jury found the subcontract had been modified then it should award TCB the set amount of money represented by invoices Fore accepted from TCB and billed to the County. The circuit judge rejected TCB’s argument that the amount of damages was set, deciding “to leave the amount of the verdict up to the jury in its discretion....” In a special interrogatory verdict form, the jury found the subcontract had been modified but that TCB was only entitled to $4,098,314.33 for breach of the modified subcontract. It also awarded Fore $520,730.99 on its “overpayment” counterclaim. The result was a $3,577,583.34 net award for TCB.
¶ 13. The circuit judge awarded TCB prejudgment interest of eight percent, accruing from the date TCB filed its complaint. The circuit judge refused to submit TCB’s punitive damages claim to the jury.
ISSUES ON APPEAL
¶ 14. On appeal, TCB argues the issues of the existence of the modified subcontract and the amount of damages owed for Fore’s breach should not have been submitted to the jury. Instead, TCB claims, as a matter of law, that Fore owed it $6,634,436.69 based on Mississippi’s doctrine of quasi-estoppel, as applied in Hoerner v. First National Bank of Jackson, 254 So.2d 754, 761-62 (Miss.1972). Fore asserts the doctrine of quasi-estoppel is not applicable to TCB’s claim. And even if the doctrine did apply, Fore contends TCB waived the argument at the trial level by not specifically pleading and arguing es-toppel.
¶ 15. As to prejudgment interest, TCB claims that because the amount of damages was liquidated, it is entitled to the eight-percent prejudgment interest from the date of breach, not the later date of filing the complaint. Fore cross-appeals on this issue, asserting TCB’s damages were unliquidated; thus, the award of prejudgment interest was an abuse of discretion.
¶ 16. TCB also requests that we remand the issue of punitive damages for a jury trial.
DISCUSSION
I. Modified Subcontract and Damages
¶ 17. TCB moved for a directed verdict in its favor on its breach-of-contract claim. We review the denial of a directed verdict de novo. Figueroa v. Orleans, 42 So.3d 49, 52 (¶ 11) (Miss.Ct.App.2010) (citing Windmon v. Marshall, 926 So.2d 867, 872 (¶ 20) (Miss.2006)). “If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted.” Entergy Miss., Inc. v. Bolden, 854 So.2d 1051, 1055 (¶7) (Miss.2003) (quoting Pace v. Fin. Sec. Life of Miss., 608 So.2d 1135, 1138 (Miss.1992)). “However, ‘our rules and case law allow for *759 questions to be removed from the jury’s consideration when there exists no factual question for it to resolve.’ ” Figueroa, 42 So.3d at 52 (¶ 11) (quoting Bolden, 854 So.2d at 1055 (¶ 8)).
¶ 18. The circuit court found W.C.’s denial of the subcontract’s modification was sufficient to create jury questions on the issues of modification and damages. But our review shows there were no jury issues to be resolved. Fore admits it did not reject a single one of TCB’s daily truck tickets or weekly invoices. Likewise, prior to TCB filing suit, Fore did not protest that TCB was working in an area outside of the area covered in the subcontract. Fore also admits it billed the County — and received payment from the County — for TCB’s work represented by these invoices. Mississippi law prevents Fore from simultaneously benefitting from the modified subcontract — by receiving over $8.5 million from the County because of TCB’s work south of Highway 53 — and then in turn repudiating any obligation to pay TCB its approximately $7.15 million share. Fore’s undisputed conduct, as a matter of law, established the subcontract’s modification. And TCB’s unquestioned invoices proved Fore owed TCB a remaining balance of $6,634,436.69.
A. Mississippi’s Quasi-estoppel Doctrine
¶ 19. Quasi-estoppel is an equitable principle that applies to certain bars, such as ratification, acquiescence, or acceptance of benefits. This long-standing doctrine is applied to preclude contradictory positions by preventing a person from asserting, to another’s disadvantage, a right inconsistent with a position previously taken. Wood Naval Stores Exp. Ass’n v. Latimer, 220 Miss. 652, 664, 71 So.2d 425, 430 (1954). Quasi-estoppel is based on the unconscionability of allowing a person to maintain a position inconsistent with one to which he acquiesced or from which he accepted a benefit. Bailey v. Estate of Kemp, 955 So.2d 777, 782 (¶21) (Miss.2007). This doctrine “applies where ‘the conscience of the court is repelled by the assertion of rights inconsistent with a litigant’s past conduct[.]’ ” Harold H. Huggins Realty, Inc. v. FNC, Inc., 575 F.Supp.2d 696, 712 (D.Md.2008) (applying Mississippi law) (quoting Unruh v. Indus. Comm’n of Ariz., 81 Ariz. 118, 301 P.2d 1029, 1031 (1956)).
¶ 20. In addressing the equitable concepts embodied in the quasi-estoppel doctrine, the Mississippi Supreme Court has explained:
Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith. A party cannot claim benefits under a transaction or instrument and at the same time repudiate its obligations.
Wood Naval, 220 Miss. at 664, 71 So.2d at 430 (citation omitted).
¶ 21. In Hoerner, the Mississippi Supreme Court applied the doctrine of quasi-estoppel to reverse a chancellor’s ruling that Fred Hoerner was not personally liable under a guaranty agreement. Hoerner, 254 So.2d at 761-62. The guaranty agreement required Hoerner’s prior approval before the bank issued a guaranteed loan. Id. at 760. At trial, Hoerner adamantly denied giving approval for the loans. And the trial court rejected as inadmissible parol evidence the testimony by bank employee’s that Hoerner had approved each loan over the phone. Id. Thus, based on Hoerner’s “undisputed” testimony, the trial court found he was not liable. Id.
*760 ¶ 22. On appeal, the supreme court determined the bank’s evidence should have been admitted. Id. at 761. But instead of reversing and remanding for the trial court to consider this evidence, the supreme court reversed and rendered in the bank’s favor. Id. at 761-62. Recognizing the “more cogent issue” on appeal was whether Hoerner had approved the loans, the supreme court found “sufficient evidence reflected by the record to signify Hoerner’s approval.” Id. at 761. The supreme court found Hoerner was “estopped to disclaim liability under the continuing guaranty clause.” Id. The Hoerner court based its opinion on evidence of Hoerner’s conduct — that he received benefits from the loan and presided over board meetings where the loans were approved. Id.
¶ 23. The supreme court held proof of Hoerner’s actual approval was unnecessary because Hoerner’s “acceptance of the benefits flowing from [the loans] could not be other than an implied approval by operation of law.” Id. at 762 (emphasis added). The Hoerner court recognized: “Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith.” Id. Thus, “based on equity and good conscience[,]” the supreme court reversed the judgment in favor of Hoerner and rendered judgment in the bank’s favor based on evidence of Hoerner’s conduct. Id. at 761-62.
¶ 24. Earlier, in Wood Naval, the supreme court similarly looked to the conduct of two association members. Wood Naval, 220 Miss, at 664-65, 71 So.2d at 429-30. Because the two members elected to continue as members of the association and “availed themselves of the advantages which the association had to offer,” they were estopped from denying their continued membership. Id. at 664-65, 71 So.2d at 430.
¶ 25. More recently, in Bailey, the supreme court relied on the same estoppel principle to uphold a contract for services provided to sell out-of-state rental properties. The Bailey court held:
This doctrine, termed “quasi-estoppel,” precludes a party from asserting, to another’s disadvantage, a right inconsistent with a position it has previously taken, and applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. This is exactly the situation at hand; the Baileys cannot profit under this contract and also seek to have it declared invalid where their obligations under the contract are concerned.
Bailey, 955 So.2d at 782 (¶ 21) (internal citation and quotations omitted). In Bailey, our supreme court found the contract should also be upheld “as a matter of equity,” because to avoid the obligations the contract created would have resulted in a “windfall.” Id. at 783 (¶ 24).
¶ 26. As equitable principles go, our inquiry focuses solely on the application of the doctrine of quasi-estoppel, as expressed in Hoerner, Wood Naval, and Bailey, to Fore’s actions related to the subcontract. Because Judge Carlton’s separate opinion delves into equitable es-toppel, quantum meruit, and unjust enrichment, we briefly note these equitable doctrines are inapplicable to this appeal. These doctrines, which are not relied on by the appellant nor the majority, are neither synonymous with quasi-estoppel — or with each other.[1] See, e.g., In re Estate of *761 Fitzner v. Jurotich, 881 So.2d 164, 173-74 (¶¶ 23-26) (Miss.2003) (separately addressing equitable estoppel and quantum meru-it). For example, while equitable estoppel requires the plaintiff to show detrimental reliance on a promise, quasi-estoppel does not. Compare Powell v. Campbell, 912 So.2d 978, 981-82 (¶¶ 11-13) (Miss.2005) (discussing equitable estoppel) with Bailey, 955 So.2d at 782 (¶21) (discussing quasi-estoppel). Instead, quasi-estoppel requires showing a party’s position is unconscionable because it is inconsistent “with one to which he acquiesced, or from which he accepted a benefit.” Bott v. J.F. Shea Co., Inc., 299 F.3d 508, 512 (5th Cir.2002) (citation omitted) (noting quasi-estoppel is “inapplicable where the conduct allegedly giving rise to the estoppel is not shown to have benefited the party sought to be estopped”).
¶ 27. In Hoerner, Wood Naval, and Bailey, quasi-estoppel operated to prohibit the defendants’ assertions that were inconsistent with their previous acceptances of benefits — subsequent bank loans (Hoer-ner), continued association membership benefits (Wood Naval), and real-estate investment services (Bailey) — and, therefore, prohibited the defendants from denying the existence of the contractual basis for the plaintiffs’ claims. Here, the unambiguous contractual language stated the subcontract between Fore and TCB “can and will be modified based upon facts and circumstances of all debris removal.” TCB essentially argues Fore is estopped from denying the modification of its subcontract with TCB since the “facts and circumstances of all debris removal” undis-putedly showed (1) Fore’s previous acceptance and ratification of TCB’s invoices for debris removed south of Highway 53, (2) Fore’s submissions of these invoices to the County for payment, (3) Fore’s receipt of payment from the County for debris TCB removed south of Highway 53, and (4) the fact that TCB — not Fore nor any other company — was the only contractor that had removed debris south of Highway 53. Because Fore ratified, accepted, and greatly benefitted from TCB’s debris removal south of Highway 53, TCB argues quasi-estoppel precludes Fore from later flip flopping to an entirely inconsistent position aimed solely at shirking its obligation to pay TCB.
B. Operation of Quasi-Estoppel on TCB’s Claim
¶ 28. Generally, “[q]uasi-estoppel is a factual determination and thus the province of the jury[.]” Stinnett v. Colo. Interstate Gas Co., 227 F.3d 247, 258 (5th Cir.2000). But if the evidence is undisputed as to the material facts, estoppel may be established as a matter of law. M.R.C.P. 56(c). See Allen v. Dempster Mill Mfg. Co., 402 S.W.2d 809, 810 (Tex.Ct.App.1966) (finding estoppel established as a matter of law because of undisputed record).
¶ 29. Bearing in mind that quasi-estoppel “precludes a party from asserting, to another’s disadvantage, a right in *762 consistent with a position it has previously taken,” we find none of the material facts related to the inconsistency between Fore’s present assertion and its previous actions are disputed. Bailey, 955 So.2d at 782 (¶ 21). Fore does not deny its previous conduct but instead admits it accepted the benefits of the modified subcontract — a contract that explicitly provided it “can and will be modified based upon facts and circumstances of all debris removal.” And for months, Fore accepted daily truck tickets and weekly invoices that showed TCB was removing debris south of Highway 53, without any protest by Fore that TCB was working outside the bounds of the area covered in the subcontract.
¶ 30. Fore argues W.C. was the only corporate agent that could bind Fore to the modified subcontract, and W.C. testified he did not know TCB was working south of Highway 53 because the “ladies” in the bookkeeping department handled these invoices without his knowledge. Therefore, Fore argues it cannot be bound to the modified subcontract through quasi-estoppel. But what Fore does not argue is that its bookkeeping employees were unauthorized to accept the invoices or submit them to the County for payment or that Fore, the corporation, was without knowledge it was accepting the benefit of TCB’s work.[2] Neither does it assert TCB unreasonably relied on the fact Fore was accepting, reviewing, and submitting for payment TCB’s invoices. Thus, we find proof of W.C.’s actual knowledge that TCB was working south of Highway 53 is not necessary to apply quasi-estoppel because Fore indisputably accepted the benefits of TCB’s work. See Hoerner, 254 So.2d at 762 (holding proof of Hoerner’s actual approval was unnecessary because Hoerner’s “acceptance of the benefits flowing from [the loans] could not be other than an implied approval by operation of law ”).
¶ 31. First, only TCB, not Fore nor any other subcontractor, removed debris from that area. Second, TCB submitted invoices to Fore’s accountants depicting TCB had removed debris from this area. Fore then reviewed TCB’s invoices and utilized the figures provided by TCB to generate its own invoices, which Fore submitted to the County for payment. Third, an independent accounting firm also inspected TCB’s trucks daily before they left the area south of Highway 53. This process required that Beck calculate the cubic yardage and verify the location from which the debris was removed. After approving the truck tickets, Beck sent copies of these tickets, which included the removal location, to Fore. Fourth, by submitting invoices to the County, Fore represented to the government that the amount and location of debris being removed from Zone 2 was accurate. Amd Fore has never *763 claimed it submitted bills to the County that were potentially fraudulent, based on work it did not know had been performed. We find, based on these various interactions with TCB, Beck, and the County as well as on the undisputed fact that TCB was the only company providing debris removal in this area, it defies credibility to suggest Fore, the corporation, had no knowledge TCB was submitting invoices for work south of Highway 53.
¶ 82. Fore does not deny these interactions or dispute that only TCB performed debris removal south of Highway 53. Instead, Fore simply argues it gets to keep every cent of the over $8.5 million the County paid it for TCB’s debris removal south of Highway 53 because the subcontract was not modified. We find, as a matter of law, that Fore cannot keep this windfall. See Bailey, 955 So.2d at 783 (¶ 24). As in Hoemer, we find Fore’s acceptance of the benefits of TCB’s work “could not be other than an implied approval by operation of law.” Hoerner, 254 So.2d at 762. Quasi-estoppel applies because “the conscience of the court is repelled” by Fore taking the position it does not have to pay TCB its contract rate when Fore operated as if the subcontract included debris removal south of Highway 53. Huggins Realty, 575 F.Supp.2d at 711-12.
¶ 33. Judge Carlton’s separate opinion focuses on the denial of TCB’s motion for a judgment notwithstanding the verdict and finds the evidence supports the jury’s verdict. “Our standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are ... identical.” Sperry-New Holland v. Prestage, 617 So.2d 248, 252 (Miss.1993) (superseded by statute on other, unrelated grounds) (citing Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992)). Under this standard:
If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [we are] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Id. (citing Munford, 597 So.2d at 1284). “The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.” Id. (emphasis added). “If the trial court ‘has exercised its discretionary authority against a substantial misperception of the correct legal standards, our customary deference to the trial court is pretermit-ted ... for the error has become one of law.’ ” Id. (citing Southern v. Glenn, 568 So.2d 281, 284 (Miss.1990); Nationwide Mut. Ins. Co. v. Evans, 553 So.2d 1117, 1119 (Miss.1989); Gibson v. Manuel, 534 So.2d 199, 204 (Miss.1988)). Here, we find the trial court erred by failing to apply the doctrine of quasi-estoppel to the issue of the subcontract’s modification. Based on the undisputed facts presented at summary judgment and at trial, Fore is estopped from disclaiming its obligation under the modified subcontract. See Hoerner, 254 So.2d at 761. Thus, the trial court should have granted TCB’s motion for a directed verdict.
¶ 34. Just as the issue of modification was not a jury issue, neither was the issue of damages. The circuit court decided to leave the amount of damages to the jury’s discretion. We find the submission of the issue of damages to the jury to be error. Fore presented no evidence to dispute the *764 amount of cubic yards TCB removed.[3] And the subcontract provided for a rate $8.90 per cubic yard, leaving no jury question about the amount of TCB’s compensation under the modified subcontract.
¶ 35. Judge Carlton’s separate opinion claims TCB failed to submit a jury instruction asking for damages in the set amount of $6,634,486.69. But TCB moved for summary judgment, arguing there were no disputed factual issues, and then moved for a directed verdict for the same reasons. We hold that the issue of damages should not have gone to the jury. Nonetheless, TCB explained to the circuit court that it had not prepared an instruction on damages because it was unsure whether the court would award it the amount of its claim or submit the issue to the jury. Though TCB continued to maintain that it should be entitled to the set amount, the circuit court decided to submit the issue of the amount of damages to the jury.
¶ 36. In A & F Properties, this court held it was error to find the defendant breached the contract but not award the undisputed amount plaintiff would have received but for the breach. A & F Props., LLC v. Lake Caroline, Inc., 775 So.2d 1276, 1281-82 (¶¶ 13-17) (Miss.Ct.App.2000). In that case, we reversed the jury’s award and rendered an award in the amount of plaintiffs full claim. Id. Similarly, TCB is entitled to be placed in the same position it would have been absent Fore’s breach of the modified subcontract. Therefore, we reverse the jury’s damage award and render judgment in TCB’s favor in the amount of $6,634,436.69.
C. Fore’s Claim of Waiver
¶ 37. Fore argues TCB did not plead estoppel — only breach of contract — and, therefore, cannot recover under this equitable theory of quasi-estoppel. Fore further claims TCB neither asserted “estop-pel” in its motion for summary judgment nor in its ore tenus motion for a directed verdict but instead raised this equitable theory for the first time on appeal. TCB counters that quasi-estoppel was not a separate claim or an alternative ground for recovery. Instead, quasi-estoppel arose as TCB’s response to Fore’s breach-of-contract defense that the subcontract was never modified. Having considered Fore’s argument, we find TCB did not waive the application of quasi-estoppel.
¶ 38. Quasi-estoppel is not an independent claim that must be pled. E.g., Hoemer, 254 So.2d at 762 (applying quasi-estoppel to a breach-of-guaranty claim). Rather, quasi-estoppel is an affirmative defense. See M.R.C.P. 8(c); see also Stimpson v. Plano Indep. Sch. Dist., 743 S.W.2d 944, 945 (Tex.Ct.App.1988) (discussing the affirmative defense of estoppel). Typically, it is the defendant who affirmatively pleads quasi-estoppel to show the plaintiffs claim is based on an inconsistent position. E.g., Wood Naval, 220 Miss. at 659, 71 So.2d at 427 (noting that the defendant alleged estoppel in its answer). But a plaintiff like TCB may also assert quasi-estoppel in response to the defendant’s answer. See Schachar v. N. Assur. Co. of Am., 786 S.W.2d 766, 768 (Tex.Ct.App.1990) (discussing how quasi-estoppel may be asserted as “a defense urged by the original plaintiff to the defendant’s affirmative pleading”).
¶ 39. TCB correctly points out that Mississippi’s pleading rules do not require the plaintiff to file a response to the defen *765 dant’s answer. TCB argues it was not until Fore filed its answer that it first learned Fore was denying the modification of the subcontract. But we are satisfied TCB did not waive the defense of quasi-estoppel at the pleadings stage because TCB alleged sufficient facts in its complaint to support the theory. Scott v. City of Goodman, 997 So.2d 270, 276 (¶ 14) (Miss.Ct.App.2008) (holding M.R.C.P. 8 does not require “magic words”); “Moore” Burger, Inc. v. Phillips Petroleum, Co., 492 S.W.2d 984, 936 (Tex.1972) (finding estoppel defense was not waived, even though “plaintiff did not use the words ‘estoppel’ or ‘promissory estoppel’ in its trial pleadings,” because “it pleaded facts which, if true, would give rise to the legal concept”).
¶ 40. TCB pled that the subcontract existed because Fore accepted the benefit of the modified subcontract. And in its motions for summary judgment and motion for a directed verdict, TCB argued W.C.’s inconsistent testimony that the subcontract had not been modified could not be used to dispute Fore’s previous conduct. Specifically, when moving for a directed verdict, TCB’s attorney argued:
The evidence is undisputed that all of this work was done that we’ve been arguing about, that the tickets were given to [W.C.]. He accepted them, turned them into the County and the County has paid it. I believe that the evidence would justify at this point a motion for entry of judgment in favor of [TCB] for the amount of [$6,634,436.69] just like I thought summary judgment should have been granted ... I don’t think [W.C.’s testimony] is evidence sufficient to overcome the completion of the contract and the acceptance of the work and the money by [W.C.].
While TCB did not use the magic word “estoppel,” it did argue W.C.’s denial of the modification was not “sufficient to overcome the completion of the contract and the acceptance of the work and the money_” Thus, we find TCB sufficiently raised and argued the application of quasi-estoppel to the circuit court.
¶ 41. Further, we note that in Hoerner, a case that directs us to apply quasi-estop-pel under these circumstances, the supreme court did not attribute its application of estoppel to the bank’s pleadings or defenses below. Hoerner, 254 So.2d at 760. Instead, the bank appealed the trial court’s refusal to admit its evidence refuting Hoerner’s denial of the loan approval. Id. at 760-61. Based on the record facts below, the supreme court applied quasi-estoppel, concluding that as a matter of law the loans were ratified by Hoerner’s conduct. Id. at 761 (“We are of the opinion that Hoerner is now estopped.... ”). Reviewing the trial record here, we are of the same opinion as the supreme court in Hoemer and find no procedural bar to the application of quasi-estoppel to Fore’s inconsistent assertions.
II. Prejudgment Interest
¶ 42. Both TCB and Fore appeal the circuit court’s award of prejudgment interest. TCB argues, because its damages were liquidated, prejudgment interest should have been awarded from the date of the breach of the subcontract, not the later date when it filed its complaint for breach of contract. Fore claims, because TCB’s damages were unliquidated, no prejudgment interest should have been awarded. We affirm the award of prejudgment interest but remand this case to the circuit court to calculate the interest from the date of the breach.
A. Standard for Awarding Prejudgment Interest
¶ 43. A trial judge may “award prejudgment interest to the pre *766 vailing party in a breach of contract suit if prejudgment interest was requested in the complaint.” Cain v. Cain, 967 So.2d 654, 663 (¶ 19) (Miss.Ct.App.2007) (citing Warwick, 603 So.2d at 342). We review the award or denial of interest for abuse of discretion. Moeller v. Am. Guarantee & Liab. Ins. Co., 812 So.2d 953, 958 (111) (Miss.2002).
¶ 44. When damages are liquidated or there has been a bad-faith denial of payment, “the prevailing party in a breach of contract suit is entitled to have added legal interest on the sum recovered computed from the date of the breach of the contract to the date of the decree.” Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp., 743 So.2d 954, 971 (¶ 53) (Miss.1999) (reversing denial of prejudgment interest on subcontractor’s successful breach-of-contract claim); see also U.S. Fid. & Guar. Co. v. Estate of Francis ex rel. Francis, 825 So.2d 38, 50 (¶ 36) (Miss.2002) (finding that “[pjrejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or when the denial of a claim is frivolous or in bad faith”). “Liquidated” damages are “damages that are set or determined by a contract when a breach occurs.” Moeller, 812 So.2d at 959 (¶ 18) (citing Black’s Law Dictionary 395, 397 (7th ed.1999)). “The purpose of awarding prejudgment interest [on liquidated claims] is not to punish the wrongdoer but to compensate the innocent party for the detention of the overdue funds.” Cain, 967 So.2d at 663 (1119).
¶ 45. In contrast, “unliquidat-ed” damages “cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury.” Moeller, 812 So.2d at 960 (¶ 18) (quoting Black’s at 397). “No award of prejudgment interest is allowed where the principal amount has not been fixed prior to judgment.” Estate of Francis, 825 So.2d at 50 (¶ 36) (citation omitted).
¶ 46. If there is a bona fide dispute as to whether the plaintiff is entitled to recover damages and in what amount, the claim is not liquidated. Estate of Gillies v. Gillies, 830 So.2d 640, 647 (¶25) (Miss.2002). In Gillies, there was a dispute not only over whether the defendant owed the plaintiff damages but also over how much was owed. Id. The trial court properly rejected the claim for prejudgment interest because the plaintiffs award was based on quantum meruit and his damages were measured by the reasonable value of his services, not a fixed contract rate for his services. Id.; see also Warwick, 603 So.2d at 342 (holding that damages were not liquidated because there were several contested issues surrounding the measure of damages — namely the value of stock the defendants contracted to buy).
¶ 47. But prejudgment “[ijnterest may be awarded when the amount of damages is certain, even if the fact of liability for those damages is disputed.” Cain, 967 So.2d at 664 (¶ 23) (reversing denial of prejudgment interest on breach and remanding to trial court to calculate and award prejudgment interest). In Cain, the parties disputed whether a services contract had been orally modified. The plaintiff requested a set amount of damages — the amount in outstanding invoices sent to the defendant. Id. at 664 (¶¶ 21-22). The defendant argued the contract had been modified, and it owed nothing more to the plaintiff. Id. at 663 (¶ 20). The jury found for the plaintiff. The trial court denied prejudgment interest to the plaintiff because the defendant disputed it owed plaintiff any damages. Id. This court reversed the denial of prejudgment interest as an abuse of discretion because *767 there was “no dispute as to the amount of damages at stake.” Id. at 664 (¶ 23). Thus, the damages were liquidated and “fixed as of the date of the breach of contract.” Id. We remanded to the trial' court to calculate and award prejudgment interest, calculated from the date of the defendant breach the contract.
B. TCB’s Liquidated Damages
¶ 48. Citing Gillies and Warwick, Fore argues the amount of damages was disputed; thus, the circuit court abused its discretion by awarding prejudgment interest at all. Though the contract rate of $8.90 was fixed, Fore argues the extent to the which the subcontract was modified required jury resolution. Fore supports its argument with the fact the jury returned a damages award for less than TCB’s requested amount.
¶ 49. We disagree and find TCB and Fore’s dispute is similar to that in Cain. Fore denied it owed anything for work south of Highway 53 because the subcontract had not been modified. But it did not dispute the amount of work TCB performed south of Highway 53. Indeed, it used the exact figures from TCB’s invoices to generate the bills Fore sent to the County. As we determined Fore’s undisputed conduct left no jury issue as to Fore’s contractual obligation to pay these invoices, we find there is no dispute as to how much is owed on these invoices. Thus, TCB’s damages are liquidated and were fixed at the time Fore breached the subcontract by failing to pay TCB for its work.
¶ 50. The circuit court correctly awarded TCB eight-percent prejudgment interest. But it erroneously set the date the interest began to accrue as the date TCB filed suit. This interest actually began to run at the time of breach. Mississippi Code Annotated section 75-17-1(1) (Rev.2009) provides: “The legal rate of interest on all notes, accounts and contracts shall be eight percent (8%) per an-num, calculated according to the actuarial method-” And Mississippi Code Annotated section 75-17-7 (Rev.2009) provides:
All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.
In interpreting these two statutes, the Mississippi Supreme Court has made the distinction between judgments based on a contract and other judgments. In re Duckett v. Duckett, 991 So.2d 1165, 1181 (¶ 34) (Miss.2008). “Under Section 75-17-7, if the judgment of the lower court is not based on a contract or note, and the lower court decides to award prejudgment interest at ‘a per annum rate set by it,’ it may only calculate that interest ‘from a date determined by the court to be fair but in no event prior to the filing of the complaint.’ ” Id. (quoting Miss.Code Ann. § 75-17-7) (emphasis added). But for judgments based on breach of contract, the supreme court, relying on both sections 75-17-1 and 75-17-7, has held eight-percent prejudgment interest should run from the date of the breach of contract. Sentinel Indus., 743 So.2d at 971 (¶ 53) (citing Stockett v. Exxon Corp., 312 So.2d 709, 712 (Miss.1975)); see also Estate of Baxter v. Shaw Assocs., Inc., 797 So.2d 396, 403-04 (¶ 30, ¶ 34) (Miss.Ct.App.2001) (discussing both the general rule that interest runs from the date of breach of contract and the supreme court’s application of section 75-17-1 in determining prejudgment interest in breach-of-contract cases). On remand, *768 the circuit court should calculate the eight-percent prejudgment interest from the earlier date of the breach — the time Fore had received payments from the County but did not to pay TCB its share.
III. Punitive Damages and Attorney’s Fees
¶ 51. In addition to full compensation under the modified subcontract, TCB seeks remand of the issue of punitive damages and attorney’s fees to the circuit court. We find the circuit court did not abuse its discretion in denying punitive damages.
A. Standard for Recovering Punitive Damages
¶ 52. The prevailing party in a breach-of-contract action may recover punitive damages “where such breach is attended by intentional wrong, insult, abuse, or such gross negligence as amounts to an independent tort.” Fought v. Morris, 543 So.2d 167, 173 (Miss.1989). Attorney’s fees are also recoverable when a punitive damages award would be proper. Puckett v. Gordon, 16 So.3d 764, 771 (¶ 26) (Miss.Ct.App.2009) (finding, absent a contract provision or statutory authorization, attorney’s fees may not be awarded “unless punitive damages are also proper”).
¶53. The Mississippi Supreme Court has cautioned that punitive damages “are appropriate only in extreme cases” and “should be awarded only with caution and within narrow limits.” Fought, 543 So.2d at 173 (citations and internal quotations omitted). That is because the purpose of punitive damages is punishment, not compensation. See Puckett, 16 So.3d at 771 (¶ 24) (describing punitive damages as exemplary “added damages”); Sudeen v. Castleberry, 794 So.2d 237, 249 (¶ 35) (Miss.Ct.App.2001) (“What is otherwise a windfall is deemed necessarily granted to the plaintiff as his reward for public service in bringing the wrongdoer to account.”).
¶ 54. “Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.” Miss. Code Ann. § ll-l-65(l)(a) (Supp.2011). The trial court must consider the “totality of the circumstances to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard.” Doe, 835 So.2d at 81 (¶ 17) (citing Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1191 (Miss.1996)).
B. Standard of Review
¶ 55. TCB asserts the question of whether to submit the issue of punitive damages to the trier of fact is one of law, prompting our de novo review. To this end, TCB argues the line of Mississippi Supreme Court cases relying on Hurst v. Southwest Mississippi Legal Services Corp., 708 So.2d 1347, 1351 (Miss.1998)— which instruct that our standard of review is abuse of discretion — are “an aberration.” See e.g., Mariner Health Care, Inc. v. Estate of Edwards ex. rel. Turner, 964 So.2d 1138, 1148 (¶ 22) (Miss.2007); Bradfield v. Schwartz, 936 So.2d 931, 936 (¶ 15) (Miss.2006); Tillman v. Singletary, 865 So.2d 350, 354 (¶ 18) (Miss.2005); Doe ex rel. Doe v. Salvation Army, 835 So.2d 76, 81 (¶ 17) (Miss.2003).
¶ 56. However, “[t]here is no right to recover punitive damages. The award of such damages has always been discretionary.” Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 460-61 (Miss.1983) (considering Mississippi law on punitive damages as far back as 1854) (empha *769 sis added). Further, in 1993, the Legislature adopted Mississippi Code Annotated section 11-1-65 to govern “the propriety and manner” of awarding punitive damages. 1993 Miss. Laws Ch. 302 (H.B. 1270). The statute clearly gives the trial court discretion over whether to submit the issue of punitive damages to the jury:
(c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact.
(d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.
Miss.Code Ann. § 11-1-65(1) (Supp.2011) (emphasis added); see Doe, 835 So.2d at 79 (¶ 7) (“[T]he statute clearly states that if certain criteria are met then the court determines whether the issue of punitive damages may be submitted to the trier of fact.”) (citing Miss.Code Ann. § 11 —1— 65(1)(d) (Supp.2011)). Thus, “[t]he trial court’s determination whether a case warrants the consideration of punitive damages will not be overturned absent an abuse of discretion.” Mariner Health Care, 964 So.2d at 1148 (¶ 22) (citing Bradfield, 936 So.2d at 936 (¶ 15)).
C. The Circuit Court’s Decision
¶ 57. After the jury’s verdict, the circuit court granted Fore’s motion for a directed verdict on the issue of punitive damages because it found no evidence of malicious conduct by Fore. TCB argues Fore’s decision not to pay TCB any part of the outstanding $6,634,436.69 in invoices is evidence of malice on Fore’s part. While we find Mississippi law estops Fore, based on its conduct, from denying the subcontract had been modified, our holding does not necessitate a rejection of the circuit judge’s finding that Fore’s denial of the modification was not malicious.
¶ 58. The punitive-damages statute establishes a high evidentiary burden — clear and convincing evidence — and.accords the trial court discretion over this issue. And the supreme court cautions punitive damages aye for the extreme cases. Fore took a hard-line business position by arguing it owed TCB nothing for the work south of Highway 53, an approach prohibited under Mississippi’s quasi-estoppel principle. But the circuit court found some validity in W.C.’s testimony that he did not know TCB was performing work for Fore south of Highway 53. Though the question is admittedly close, we do not find the trial court abused its discretion as gatekeeper by finding Fore’s actions did not necessitate submission of the punitive-damages issue.
¶ 59. Because we affirm the circuit court’s ruling on punitive damages, we likewise affirm its denial of attorney’s fees. Puckett, 16 So.3d at 771 (¶ 26).
¶ 60. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE/CROSS-APPELLANT.
GRIFFIS, P.J., BARNES AND • ROBERTS, JJ., CONCUR. RUSSELL, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, P.J., AND RUSSELL, J. CARLTON, J., CONCURS *770 IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. ISHEE AND FAIR, JJ., NOT PARTICIPATING.

. Equitable estoppel involves the enforcement of a promise that does not rise to the level of a *761 contract based on the detrimental reliance of the person to whom the promise was made. E.g., Powell v. Campbell, 912 So.2d 978, 981-82 (¶¶ 11-13) (Miss.2005). “Quantum meruit recovery is a contract remedy which may be premised either on express or ‘implied’ contract, and a prerequisite to establishing grounds for quantum meruit recovery is claimant’s reasonable expectation of compensation.” In re Estate of Fitzner v. Jurotich, 881 So.2d 164, 173 (¶ 25) (Miss.2003). And unjust enrichment "is based on a promise, which is implied in law, that one will pay a person what he is entitled to according to ‘equity and good conscience.' ... It is an obligation created by law in the absence of any agreement!.]” 1704 21st Ave., Ltd. v. City of Gulfport, 988 So.2d 412, 416 (¶ 10) (Miss.Ct.App.2008).

. We note W.C.’s personal knowledge is not the legal equivalent of the corporation’s. Rather, a corporation, like Fore, is charged with the collective knowledge of its employees and agents acting on its behalf. Gutter v. E.I. Dupont De Nemours, 124 F.Supp.2d 1291, 1309 (S.D.Fla.2000) (citing 3 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 790 (1994)) (charging corporation "with constructive knowledge ... of all material facts of which its officer or agent receives notice or acquires knowledge while acting within the course of employment”); see also First Ala. Bank of Montgomery, N.A. v. First State Ins. Co., 899 F.2d 1045, 1060 n. 8 (11th Cir.1990) (noting "the general rule is that a principal is chargeable with and bound by the knowledge of his agent while acting within the scope of his authority”); United States v. Bank of New England, N.A., 821 F.2d 844, 855-56 (1st Cir.1987) (finding corporations liable for collective knowledge of all employees and agents acting on behalf of corporation); Apex Oil Co. v. United States, 530 F.2d 1291, 1295 (8th Cir.1976) (holding "knowledge of the employees is the knowledge of the corporation”).

. Contrary to Judge Carlton's separate opinion, the figure of $6,634,436.69 did not include any bills that Fore contested should not have been submitted for compensation. Instead, the figure is based on the undisputed amount of compensation the County paid Fore.